[Civ. No. 30173. Fourth Dist., Div. Three. July 29, 1983.]

PATRICIA MADIGAN et al., Plaintiffs and Appellants, v.
CITY OF SANTA ANA et al., Defendants and Respondents.

COUNSEL

Klinger, Leevan & Glassman and Michael S. Glassman for Plaintiffs and Appellants.

Kinkle, Rodiger & Spriggs, Judith I. Lang, George Vujovich and Patterson & Lucas for Defendants and Respondents.

OPINION

**TROTTER, P. J.**—We are asked to extend a cause of action for negligent infliction of emotional distress to include a parent and stepparent who were not present and did not contemporaneously observe the accident which resulted in the death of their son/stepson. We decline for reasons stated in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].

Patricia and William Madigan (Madigans) filed a complaint for wrongful death and negligent infliction of emotional distress against City of Santa Ana (City), Richard Zugman, Saul and Robert Rodriguez and Terri Lynn Hernandez, aka Terri Lynn Zintzun (Hernandez). City and Hernandez demurred to Madigans' second amended complaint, which stated three causes of action. The court sustained the demurrers to the first and second causes of action without leave to amend and dismissed them accordingly.[1] Madigans appeal from that portion of the judgment dismissing the second cause of action.[2]

---

[1]The court dismissed the first cause of action as to certain plaintiffs only; it dismissed the entire second cause of action, in which only Madigans sought recovery for negligent infliction of emotional distress.

[2]The notice of appeal raises another ground which was not briefed; it is therefore deemed waived and will not be reviewed by the court. (See *Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].)

On September 29, 1980, Hernandez' Camaro, driven by Robert Rodriguez, ran a red light and collided with a Volkswagen in which John Kimberling was riding. Richard Zugman, a City police officer, was pursuing the Camaro at the time of the accident; Kimberling, Madigans' son and stepson, was killed in the accident.

The Madigans were advised of the accident a few minutes after it occurred and arrived at the scene within 15 minutes. They observed the damaged cars, knew Kimberling was in the Volkswagen, saw the ambulance, police and fire vehicles and were told the occupants of the Volkswagen had been killed. They immediately "visualized" the events of the accident including Kimberling's death and sustained "great mental distress and shock and injury to their nervous system to the same extent as if they had actually observed the accident." (Italics omitted.)

At the hearing on demurrers, Madigans conceded inability to amend their complaint to satisfy the trial court's position on the requirements for negligent infliction of emotional distress.

## DISCUSSION

Plaintiffs argue that the *Dillon* court did not intend to predetermine a defendant's liability by fixed standards or guidelines. Rather each case is to be determined by its own facts, thus the trial court erred in sustaining defendant's demurrer since by so doing it applied a rigid and fixed formula. Plaintiffs are mistaken.

In order to determine the existence of a duty, the court must look to and consider the facts before it. As stated in *Dillon,* "[s]ince the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty or obligation must necessarily be adjudicated only upon a case-by-case basis. We cannot now predetermine defendant's obligation in every situation by a fixed category; no immutable rule can establish the extent of that obligation for every circumstance of the future. We can, however, define guidelines which will aid in the resolution of such an issue as the instant one." (*Dillon* v. *Legg, supra,* at p. 740.)

Thus a trial court in making the threshold inquiry of whether defendant owes a duty of care must look to the facts presented. The *Dillon* court set down guidelines for trial courts to follow in resolution of that issue. "In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes

plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Dillon* v. *Legg, supra,* at pp. 740-741.)

The trial court found plaintiffs did not suffer a direct emotional impact resulting from the sensory and contemporaneous observance of the accident. We agree and also note plaintiffs failed to meet the nearness criteria as well. Since it is not necessary to the resolution of this case, we defer the issue of whether a stepparent relationship is sufficient for such a cause of action.

## 1. *Nearness Requirement*

Plaintiffs arrived at the scene almost 15 minutes after the accident. Recovery has been denied when only five minutes have elapsed between the accident and arrival of the plaintiff on the scene. (*Arauz* v. *Gerhardt* (1977) 68 Cal.App.3d 937, 949 [137 Cal.Rptr. 619].) In cases where the cause of action has been allowed to stand, the plaintiff was present when the accident occurred (*Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022]; *Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553 [145 Cal.Rptr. 657], mother present when child pulled from pool) or arrived on the scene only moments later (*Archibald* v. *Braverman* (1969) 275 Cal.App.2d 253 [79 Cal.Rptr. 723]).

We decline to expand the *Dillon* formulation of nearness, in keeping with the authorities cited above.

## 2. *Sensory and Contemporaneous Requirement*

Since plaintiffs were not present when the accident occurred, they did not see or hear the impact. Their claim of sensory perception occurred 15 minutes later, when they viewed the cars and rescue vehicles involved and were told the occupants of the Volkswagen had been killed. Their "visualization" was mental, whereby they recreated the events and Kimberling's death, rather than a sensory observation.

In *Dillon* v. *Legg, supra,* the mother satisfied the sensory aspect of this requirement by actually seeing her child injured. The courts have expanded upon this factor to include auditory "witnessing" of the accident (*Nazaroff*

v. *Superior Court, supra,* 80 Cal.App.3d 553, where a mother heard a shout "It's Danny" and arrived at scene to see son being pulled from pool; *Archibald* v. *Braverman, supra,* 275 Cal.App.2d 253, where a mother heard an explosion and moments later saw the injuries to her son) and a percipient witness (*Krouse* v. *Graham, supra,* 19 Cal.3d 59, where husband knew where wife was, saw car approaching her at high speed, and immediately knew a car hit her although he did not actually see impact). Recovery was denied the parents of two girls killed in a car crash, when the parents were following the car in which their daughters were riding and came upon the accident scene "before the dust settled" although they neither saw nor heard the impact. (*Parsons* v. *Superior Court* (1978) 81 Cal.App.3d 506 [146 Cal.Rptr. 495, 5 A.L.R.4th 826].)

The rule of *Dillon* as applied in all subsequent cases requires some sensory and contemporaneous observance of the accident. That is clearly absent here; there is no showing plaintiffs *saw, heard or otherwise sensorially perceived* the event which produced the injury. To expand the clear requirements of *Dillon* would without question begin "a first excursion into the 'fantastic realm of infinite liability,'" so ominously predicted by the dissent in *Dillon.* (*Dillon* v. *Legg, supra,* at p. 749 (dis. opn. of Burke, J.).)

Judgment affirmed.

Crosby, J., and Sonenshine, J., concurred.