NANCY P. & others[1] *vs.* ANGELINA D'AMATO, administratrix.[2]

Worcester.   September 10, 1987. — January 13, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Judgment*, Default, Amendment, Relief from judgment. *Negligence*, Emo-
tional distress. *Emotional Distress*. *Actionable Tort*. *Damages*, Loss of
consortium. *Practice, Civil*, Relief from judgment. *Evidence*, Cross-
examination, Judicial discretion, Expert opinion, Relevancy and mate-
riality.

A mother's allegations that, although she was not present at the time a
neighbor forced sexual contact on her nine year old daughter, she had
suffered emotional distress on learning of the neighbor's misconduct
approximately one year later stated no claim entitling her to recovery
for negligent infliction of emotional distress. [519-520]

On claims by a nine year old girl's mother and brother that, although they
were not present at the time a neighbor forced sexual contact on the
girl, they had suffered emotional distress on learning of the neighbor's
misconduct, the evidence, absent a finding of severe emotional distress
attributable to the neighbor's conduct, did not support recovery for
intentionally or recklessly inflicted emotional distress. [520-523]

A judge did not abuse his discretion in declining to grant postjudgment
relief to a plaintiff who, approximately two months after entry of judg-
ment, had filed an untimely motion to amend the judgment to recover
on two claims she had omitted from her complaint and who had, about
one month after judgment, filed a motion for relief from judgment,
making no mention of those two claims. [523]

At the trial of an action brought to recover for harm done to a nine year old
girl by the forced sexual contact of a neighbor, the judge did not improp-
erly restrict the defendant's cross-examination of a psychiatrist, who
testified in part concerning the effect of the neighbor's conduct on the
girl, by excluding questions which merely sought general information
and which were not directed to the victim or to the specific facts of the
case. [524]

On appeal from a judgment for a nine year old girl in an action to recover
for harm done to her by the forced sexual contact of a neighbor, the

_____

[1] Nancy P.'s mother and her brother.

[2] Of the estate of Vincenzo D'Amato.

defendant could not properly challenge the trial judge's admission of opinions of the girl's psychiatrist and his reliance on them, on the ground that they were in part based on facts not proved on the record, where the opinions were admitted without objection and were never the subject of a motion to strike. [524-525]

At the trial of an action brought to recover for harm done to a nine year old girl by the forced sexual contact of a neighbor and for harm sustained by her mother and brother as result of the neighbor's conduct, the judge did not err in declining to permit the defendant to call as witnesses the mother and daughter, who had not testified during their case-in-chief, solely to impeach their psychiatrist with respect to a single statement the defendant alleged the psychiatrist had made but which, in fact, he had not made. [525]

At the trial of an action brought to recover for harm done to a nine year old girl by the forced sexual contact of a neighbor and for harm sustained by her mother and brother as result of the neighbor's conduct, the judge was entitled on his own motion to ask a psychiatric counselor, who had been called by the defendant but not qualified as an expert, for her opinions concerning the effect of the neighbor's conduct on the girl, where the witness's background warranted the judge's implied finding of her qualification to give the opinions sought, and where her association with the girl made her a source for the evidence elicited from her. [525]


CIVIL ACTION commenced in the Superior Court Department on September 3, 1981.

The case was heard by *Mel L. Greenberg*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*D. Alice Olsen* for the plaintiffs.

*Kenneth H. Tatarian* (*Patricia C. Ma* with him) for the defendant.

WILKINS, J. In March, 1981, a nine year old girl, whom we shall call Nancy, told her mother that, on several occasions in 1979 and 1980 Vincenzo D'Amato, a neighbor in his sixties who died after this action was commenced, forced sexual contact on her. This action was brought to recover for harm done to Nancy and for harm sustained by her mother and her brother, whom we shall call Owen. The plaintiffs were awarded judgment on liability pursuant to Mass. R. Civ. P. 33 (a), as amended, 368 Mass. 905 (1976). A judge then decided the issues of damages.

The judge found that on at least two occasions D'Amato touched Nancy's breasts and vagina. At a family birthday party in 1980, D'Amato arranged to be alone with Nancy, exposed himself, "touched her vaginal area," and made Nancy promise not to tell anyone what had happened.

In 1980, Nancy told her twelve-year-old brother Owen that D'Amato had done something wrong. Owen thought she was talking about hugging and kissing. He promised not to tell their mother, a divorced parent. Both children, fearing reprisal or feeling guilt, did not disclose D'Amato's conduct for some time.

After Nancy finally did tell of D'Amato's conduct and D'Amato was confronted with her accusations, a series of events followed that had emotionally traumatic effects· on Nancy. Because the defendant does not challenge the amount of damages ($100,000) awarded to Nancy on her claims for assault and battery and for intentional and negligent infliction of emotional distress, we need not recite the effect of D'Amato's conduct on Nancy. It is enough to note that she became alienated from her mother and went to live with a relative.

It is, however, important to the issues before us to recite the judge's findings as to the effect of D'Amato's misconduct on Nancy's mother and on Owen. He found that the mother was understandably angry and felt guilty because she did not protect her daughter. Owen felt guilty because he was unable to disclose the sexual abuse to any adult. Although the judge found each was obviously traumatized emotionally, he also found that neither suffered physically from the events.

The judge denied recovery to the mother and to Owen on counts alleging extreme and outrageous conduct causing physical harm and emotional distress. He found no physical injuries and denied recovery for emotional distress because the mother and Owen were not present at the time of D'Amato's extreme and outrageous conduct.

The mother and Owen appeal from a judgment denying them recovery for the effects of D'Amato's misconduct on them. The mother also challenges the judge's denial of her postjudg-

ment attempt to assert claims for loss of consortium and for medical expenses. The defendant in turn appeals from the judgment for Nancy, challenging various evidentiary rulings.

We affirm the judgment.

### APPEALS BY MOTHER AND OWEN

We consider first the claims of the mother and Owen for the infliction of emotional distress. The mother claims both intentional and negligent infliction of emotional distress. On appeal, Owen claims solely an intentional infliction of emotional distress. When, as here, a defendant is defaulted, well-pleaded facts are deemed to be admitted, but a plaintiff may recover only to the extent the complaint states a claim for relief. See *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming*, 376 Mass. 826, 834-835 (1978). Thus the plaintiffs had the burden at trial of proving damages incurred as a result of wrongs within the scope of the claims alleged for which the law provides a remedy.[3]

We first dispose of the mother's claim asserting negligent infliction of emotional distress. We have indicated that a plaintiff may not recover for negligent infliction of emotional distress unless she has suffered physical harm. *Payton* v. *Abbott Labs*, 386 Mass. 540, 555 (1982). The judge found that the mother suffered no physical consequences from the events, and he was not clearly erroneous in so finding. Certain members of this court have been willing to acknowledge that objective corroboration of a plaintiff's emotional distress may sometimes be shown in the absence of physical injury. See *DiGiovanni* v. *Latimer*, 390 Mass. 265, 273-274 (1983) (Liacos, J., concurring); *Payton* v. *Abbott Labs, supra* at 579 (Wilkins, J., dissenting in part, with whom Liacos and Abrams, JJ. joined).

---

[3] There is a distinction between the negligent infliction of emotional distress, which we discuss here, and the intentional infliction of emotional distress, which we discuss later in the opinion. Many principles applicable to negligent infliction claims are not applicable to intentional infliction claims. See *Delia S.* v. *Torres*, 134 Cal. App. 3d 471, 483 (1982). Also, there are differences between (a) motor vehicle cases and other typical personal injury cases and (b) sexual abuse cases. See *Schurk* v. *Christensen*, 80 Wash. 2d 652, 665 (1972).

We have all agreed, however, that a parent claiming emotional distress caused by negligently inflicted injuries to her child must witness the injury or come upon the injured child promptly after the injury. See *Stockdale* v. *Bird & Son*, 399 Mass. 249, 251-252 (1987); *Cohen* v. *McDonnell Douglas Corp.*, 389 Mass. 327, 341-343 (1983); *Dziokonski* v. *Babineau*, 375 Mass. 555, 568 (1978). Cf. *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 518 (1980) (wife and children who see injured employee at hospital immediately after the accident state a claim). Here the mother did not learn of the harm inflicted on her daughter until many months after the last incident of sexual abuse. The judge, therefore, properly denied the mother recovery on the theory of negligent infliction of emotional distress.

The question of the intentional infliction of emotional distress raises somewhat different considerations. We have placed reckless and intentional infliction of emotional distress in the same category. See *Payton* v. *Abbott Labs, supra* at 547; *Simon* v. *Solomon*, 385 Mass. 91, 95 (1982). We have not made physical harm an essential element of such a claim. See *Simon* v. *Solomon, supra; Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144 (1976). If a defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely consequence of his conduct, if his conduct was extreme and outrageous (as our cases have defined it, *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 99-100 [1987]), and if his conduct caused the plaintiff severe emotional distress, we would impose liability. See *Simon* v. *Solomon, supra; Agis* v. *Howard Johnson Co., supra* at 144-145. The focus of our cases,[4] and of cases elsewhere, dealing with intentional infliction of emotional distress has been on the emotional distress of a person against whom the extreme and outrageous conduct was directed. Here D'Amato did not intend to cause emotional distress to the mother and Owen. It was his hope that they would never learn of

---

[4] See *Beecy* v. *Pucciarelli*, 387 Mass. 589 (1982); *Richey* v. *American Auto. Ass'n*, 380 Mass. 835 (1980); *Harrison* v. *Loyal Protective Life Ins. Co.*, 379 Mass. 212 (1979); *Boyle* v. *Wenk*, 378 Mass. 592 (1979); *Agis* v. *Howard Johnson Co., supra.*

his misconduct. Yet it would be a question for the trier of fact whether D'Amato acted recklessly, indifferent to the likely effect of his conduct on family members who would be apt in time to learn of his outrageous conduct. Surely a trier of fact would have been warranted in concluding that D'Amato's conduct was extreme and outrageous and that he acted with reckless indifference to the likely effect of his conduct on the mother and on Owen.

The judge did not reach these questions because he concluded that the mother and Owen could not recover because they were not present at the time of D'Amato's misconduct. The prevailing view among courts which have considered the question is that an absent family member may not recover for severe emotional distress caused by extreme and outrageous conduct directed at another family member. See, e.g., *H.L.O.* v. *Hossle*, 381 N.W.2d 641, 644-645 (Iowa 1986) (parents not present at the time of the defendant's tortious acts may not recover for emotional distress caused by neighbor's sexual abuse of their children); *Miller* v. *Cook*, 87 Mich. App. 6, 11 (1978) (plaintiff not present when child was beaten may not recover); *Calliari* v. *Sugar*, 180 N.J. Super. 423, 429 (1980) (purchasers of real property may not recover for emotional distress resulting from discovery of body of seller's wife buried in back yard); *Lund* v. *Caple*, 100 Wash. 2d 739, 741 (1984) (husband not present when defendant had sexual relations with wife may not recover); W.L. Prosser & W.P. Keeton, Torts § 12, at 65 (5th ed. 1984).[5]

The Restatement (Second) of Torts § 46(2) (1965), set forth in the margin,[6] recognizes liability for intentionally or reck-

---

[5] There is little or no contrary authority. In *Delia S.* v. *Torres*, 134 Cal. App. 3d 471 (1982), involving the rape of the plaintiff's wife by the defendant, a former friend, the plaintiff was allowed to recover for intentional infliction of emotional distress although he was not present at the time of the rape. Language in the court's opinion treats the husband as a direct victim of the defendant's conduct. *Id.* at 482-484. Cf. *Molien* v. *Kaiser Found. Hosps.*, 27 Cal. 3d 916, 930-931 (1980) (husband may recover for emotional distress as direct victim of defendant's negligent misdiagnosis of wife as having syphilis).

[6] "Where such conduct is directed at a third person, the actor is subject to

lessly caused severe emotional distress of a family member who is present when extreme and outrageous conduct is directed at another family member. By a caveat,[7] the Restatement leaves entirely open the possibility in other instances of liability for the intentional or reckless infliction of emotional distress.

As noted above, this court has recognized the possibility of liability for harm caused to a parent who was not present at the time of negligent conduct causing injury to a child. Where the wrongful conduct is intentional or reckless, we might be even less inclined to make a parent's physical presence an essential element of liability. A custodial parent of a young child sexually abused by a trusted adult neighbor might present a particularly appealing case for not imposing a presence requirement. We do not, however, decide the point.

Even if the family member's presence were not a condition of liability, we would normally require both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response. Neither is present here. Because D'Amato told Nancy not to tell anyone about the incidents and it may be inferred that she was, therefore, afraid to tell her mother about these events for many months, we lay little stress on the absence of substantially contemporaneous knowledge in deciding this issue. It is true, however, that Owen's knowledge was not shown to be substantially contemporaneous. In any event, his emotional response was not severe. The mother did not learn of D'Amato's misconduct for approximately one year and, more importantly, although the mother was affected emotionally, there is no finding of severe emotional distress attributable to D'Amato's conduct, and the evidence would not warrant such a finding. The evidence did not

---

liability if he intentionally or recklessly causes severe emotional distress

    (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

    (b) to any other person who is present at the time, if such distress results in bodily harm."

[7] "Caveat: The Institute expresses no opinion as to whether there may not be other circumstances under which the actor may be subject to liability for the intentional or reckless infliction of emotional distress."

support recovery for intentionally or recklessly inflicted emotional distress.[8]

Approximately two months after entry of judgment the plaintiffs filed a motion to amend the judgment. In that motion, among other things, the mother sought to recover for loss of consortium and for medical expenses incurred in the treatment of her daughter. The motion to amend the judgment was untimely. See Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974) ("shall be served not later than ten days after entry of the judgment"). A motion for relief from judgment, filed about one month after judgment, made no mention of loss of consortium or medical expenses. In any event, Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), does not list an omission to plead a claim as a reason for relief from judgment. We doubt that a matter that should have been raised by a timely motion to amend the complaint is a "reason justifying relief from the operation of the judgment" under rule 60 (b) (6). In any event, even if we were to treat the matter of the two new claims as being properly before the judge on the rule 60 (b) motion, he did not abuse his discretion in declining to grant relief to the mother on these claims. See *Schulz* v. *Black*, 369 Mass. 958 (1975). The default entered against the defendant on liability did not relate to such claims, and very likely the defendant would have been entitled to a trial as to liability on these claims.[9]

---

[8] We recognize that in some sexual abuse cases the defendant's conduct may recklessly cause severe emotional distress even though the defendant did not intend to do so and in fact hoped his conduct would come to no one else's attention.

[9] The amendment to add a consortium claim could not properly have been rejected on the ground that it asserted a claim already made in the case. A loss of consortium claim is not the same as a claim based on the infliction of emotional distress. Cf. *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323 Mass. 323, 334 (1982) ("A claim for damages based on emotional distress does not include an administrator's claim for loss of consortium . . ."). The two claims are theoretically different and deal with different responses to the same wrong, even though a plaintiff might have difficulty sorting out whether a particular emotional response is attributable to the loss of consortium or to the direct effect of the wrong (or to both).

DEFENDANT'S APPEAL

The defendant challenges the judgment in favor of the victim, arguing that the judge committed reversible error in various evidentiary rulings. There was no such error.

a. The judge did not improperly restrict the defendant's cross-examination of a psychiatrist who testified in part concerning the effect of D'Amato's conduct on Nancy. The excluded questions sought general information and were not directed to the victim or to the specific facts on this case.[10]

The judge's rulings were well within his discretion to limit general or indefinite cross-examination, particularly in a non-jury trial. See *Commonwealth* v. *Mitchell*, 367 Mass. 419, 420 (1975); *Commonwealth* v. *Greenberg*, 339 Mass. 557, 580 (1959); *McGuerty* v. *Hale*, 161 Mass. 51, 52 (1894) (direct examination). No prejudice resulted, even if exclusion of these questions was error. The witness answered specific questions concerning (a) factors affecting the results of sexual molestation on a child; (b) the impact on children of divorce and of changing schools; and (c) whether the mother's admitted lesbianism had an effect on her relationship with her daughter.

b. The opinions of the plaintiffs' psychiatrist were admitted without objection and were never subject to a motion to strike. Therefore, the defendant's challenge to the admission of those opinions and to the judge's reliance on them, on the ground that they were in part based on facts not proven on the record, may not properly be presented here. See *Freyermuth* v. *Lutfy*, 376 Mass. 612, 616-617 (1978). The witness was permitted to state the information he had received on which he relied in giving his opinions. Those facts were not admitted to prove their truth, and the judge could not properly rely on them in

---

[10] The questions were:

1. "What factors affect the results of sexual molestation on each child?"

2. "And there are several events — many events that could possibly traumatize a girl, is that correct?"

3. "Doctor, is divorce a traumatic event for some children?"

4. "It's important for children to maintain [some stability in their school and academic life], is that correct?"

5. "Doctor, do you know of any scientific study which shows that a mother's lesbianism has no effect on the adolescent daughter?"

making findings. He could, however, as he did, make findings based on the expert's opinons, which were admitted for their full probative value. See *Commonwealth* v. *Stewart*, 398 Mass. 535, 543 (1986). We note that the defendant's appellate counsel was not trial counsel.

c. Presumably for tactical reasons, and perhaps because of the default which established the defendant's liability on any properly pleaded claim, the mother and Nancy did not testify during the plaintiffs' case-in-chief. The judge declined to permit the defendant to call them (and two other persons) to testify. At first impression the propriety of that ruling appears to be doubtful, because surely a defendant should be entitled to call the plaintiffs in a case such as this. Here, however, the defendant sought to call these witnesses only to impeach the plaintiffs' psychiatrist and then only in one respect. In fact the psychiatrist had not made the statement as to which the defendant sought to impeach him. There was nothing, therefore, to impeach through the witnesses the defendant wished to call.[11]

d. The judge was entitled on his own motion to ask a psychiatric counselor for her opinions concerning the effect of D'Amato's misconduct on Nancy. The defendant had called her as a witness but had not attempted to qualify her as an expert. The witness's background warranted the judge's implied finding of her qualification to give the opinions sought. See *Commonwealth* v. *Boyd*, 367 Mass. 169, 183 (1975). Her association with Nancy made her a reasonable source for the evidence the judge elicited from her.

*Judgment affirmed.*

---

[11] The defendant wanted to prove that Nancy knew of her mother's homosexual relationship with a woman who was part of the household. The psychiatrist had not testified, however, that Nancy did not know of that relationship. He testified that the mother told him that she believed the children did not know that she was a homosexual.