[No. 55437–4.  En Banc.  March 8, 1990.]

STEWART L. GAIN, JR., ET AL, *Appellants,* v. CARROLL
MILL COMPANY, INC., ET AL, *Respondents.*

*Lehner & Mitchell,* by *Michael A. Lehner,* for appel-
lants.

*Bullivant, Houser, Bailey, Pendergrass & Hoffman,* by *R. Daniel Lindahl,* for respondents.

DORE, J.—The trial court dismissed a claim of negligent infliction of emotional distress caused by the negligent bodily injury of a family member. We hold the claim was properly dismissed, as the plaintiffs were not physically present at the scene of the accident.

## FACTS

This case arose out of an incident on March 2, 1987, when James S. Gain, a trooper for the Washington State Patrol, was killed by a truck owned by respondent Carroll Mill Company, Inc. On the same evening of the accident, during the 11 o'clock news, the appellants, the father and brother of the decedent, allegedly saw film relating to the fatal accident and were able to confirm that James was the victim when they saw his vehicle and identified the license plate number.

Appellants subsequently filed a complaint against respondents alleging "[a]s a result of the death of James S. Gain and the violent and public nature of his death . . ." they are entitled to relief for the negligent infliction of emotional distress which was "proximately caused by the negligence of [respondents]." Respondents moved to dismiss, under CR 12(b)(6), on the grounds that appellants were not present at the accident scene, and that they were not placed in physical peril. The respondents' motion incorporated the following stipulation of facts:

1. Plaintiffs are family members of James S. Gain.
2. On or about March 2, 1987, James S. Gain was killed on or near Interstate 5 in an accident allegedly caused by negligence of Defendants.
3. At the time of the accident, Plaintiffs were not present at the place where James S. Gain was killed.
4. Plaintiffs were not placed in physical peril by the alleged negligent actions of Defendants.

256

Clerk's Papers, at 7–14. The trial judge granted summary judgment.[1] The trial court dismissed appellants' claim based on a rule established in *Cunningham v. Lockard,* 48 Wn. App. 38, 736 P.2d 305 (1987), to the effect that no action can lie for mental distress caused by negligent bodily injury of a family member, unless the claimant was present at the time of the accident.

■ The dissent claims the stipulated facts do not support a cause of action. However, the stipulated facts were not the only facts before the trial court, but were supplemental to the facts in the pleadings and the defendants' trial memorandum.

The dissent tries to ignore the facts in the pleadings by stating the plaintiffs are precluded from relying on their pleadings. This is not true. The stipulated facts were signed by the attorneys, and not the parties to the suit. These stipulated facts were not made on personal knowledge. Only when a summary judgment motion is supported and made on personal knowledge is the adverse party precluded from relying on his pleadings. *See* CR 56(e).

Furthermore, the moving party, the defendants, supported their summary judgment motion with the "pleadings on file with the court, the attached Memorandum of Law and the Stipulation of Facts." Clerk's Papers, at 6. Defendants' Motion to Dismiss. Plaintiffs' emotional distress was admitted as a fact in the pleadings, conceded to in defendants' trial memorandum and accepted by the Judge. The Judge agreed with the defendants that even though plaintiffs suffered emotional distress, they do not have a cause of

---

[1]While defendants' motion was styled as a motion to dismiss under CR 12(b)(6), the trial court properly treated it as a motion for summary judgment under CR 56. The record indicates the trial court considered the stipulated facts submitted with defendants' motion. CR 12(b) provides that a CR 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in CR 56 if matters outside the pleading are presented and not excluded by the court. *St. Yves v. Mid State Bank,* 111 Wn.2d 374, 377, 757 P.2d 1384 (1988) (trial court dismissed action under CR (12)(b)(6), not excluding affidavits; on review this court treated it as a summary judgment); 5 C. Wright & A. Miller, *Federal Practice* § 1366, at 675 (1969).

action because they were not present at the time of the accident. To reach this decision, the Judge had to accept the facts in the pleadings as true because there is no allegation of emotional distress in the facts designated as "stipulated facts". In addition, the briefs and oral argument were predicated on the facts in the pleadings being part of · the *stipulated facts*. This is manifested by the Judge's memorandum opinion in which he concludes:

> The summary judgment shall be granted. The father and brother claims for emotional distress under the *stipulated facts* indicates that they were not present at the time of the accident.

Clerk's Papers, at 21. This is undisputed evidence that the trial Judge considered the facts in the pleadings as part of the *stipulated facts*.

The stipulated facts were in *addition* to the facts in the pleadings and the facts agreed to in defendants' trial memorandum.

## ANALYSIS

The tort of negligent infliction of emotional distress was recognized in Washington in *Hunsley v. Giard,* 87 Wn.2d 424, 553 P.2d 1096 (1976). In *Hunsley,* the plaintiff sought damages for mental distress she suffered when a car crashed into her house while she was sitting in the living room and her husband was in an adjacent room. We reexamined the then general rule of no liability for mental distress where the defendant's actions were negligent and there was no impact to the plaintiff. We decided, instead of adopting arbitrary rules, to test plaintiff's negligence claim against the established concepts of duty, breach, proximate cause, and damage. *Hunsley,* at 434. We held that a defendant had a duty to avoid the negligent infliction of mental distress. *Hunsley,* at 435. We further held that it was not necessary that there be any physical impact or threat of an immediate physical invasion of plaintiff's personal security. *Hunsley,* at 435.

The issue presented here is whether a plaintiff need be *physically present at the scene of the accident* before he

has a claim for mental distress caused by the negligent bodily injury of a family member. In other words, does a defendant's duty to avoid the negligent infliction of mental distress extend to plaintiffs not present at the scene of the accident? In *Hunsley* the plaintiff was present so this issue was not raised. In a case prior to *Hunsley,* however, we did discuss the issue presented by plaintiffs in this case. In *Schurk v. Christensen,* 80 Wn.2d 652, 497 P.2d 937 (1972), the parents of an allegedly sexually molested child brought an action for damages resulting from the alleged sexual molestations of their child. The parents did not observe the molestations and learned about them at a later date from a third party. We rejected plaintiffs' claim based on the then general rule of no liability for negligent infliction of emotional distress. Nonetheless, in evaluating the parents' claim, we quoted and applied the language of the leading case, *Dillon v. Legg,* 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72, 29 A.L.R.3d 1316 (1968), which had recognized the tort of negligent infliction of mental distress:

> In determining . . . whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) *Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.* (2) *Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.* (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.
>
> The evaluation of these factors will indicate the *degree* of the defendant's foreseeability: obviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it. The defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone

distant from the accident will suffer more than a temporary emotional reaction.

*Schurk,* at 656 (quoting *Dillon v. Legg,* 68 Cal. 2d 728, 740–41, 441 P.2d 912, 69 Cal. Rptr. 72, 29 A.L.R.3d 1316 (1968)). After distinguishing the facts before us with those in *Dillon,* we concluded that even under the rationale of cases allowing recovery for mental distress, plaintiffs' claim was not viable:

> In *Dillon* the mother *was* near the scene of the accident. She observed her daughter being injured and did not learn the facts from others.
>
> In the instant case, the mother was not near the scene of the molestations; she did not observe these injuries occurring to her daughter, and learned of the occurrences at a later date from a third person. We do not believe the facts of the instant case even come within the guidelines of *Dillon* to indicate a degree of foreseeability by the defendant parents, sufficient to predicate recovery by Maria Argo's mother for mental anguish and distress.

*Schurk,* at 656–57. Based on the facts presented, we held

> this is not the case for consideration of a change of this long established rule [of no liability for negligent infliction of mental distress] since it would be of no avail to the plaintiffs.

*Schurk,* at 657.

The foreseeability analysis suggested by the *Dillon* court and applied in *Schurk* is similar to the type of analysis we adopted in *Hunsley.* Thus while *Schurk* did not recognize plaintiffs' claim for negligent infliction of mental distress, it is supportive of the position that plaintiffs must be present at the scene of the accident before they can pursue a claim for negligent infliction of mental distress. *Schurk* also recognizes that an outer limit of liability exists in this tort.

■ Likewise, *Hunsley* recognized that the tort of negligent infliction of mental distress is not without limits. Specifically we noted a defendant's liability is limited by the element of foreseeability. *Hunsley,* at 436.

As noted in *Dillon,* a defendant is more likely to foresee "that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional

reaction." *Dillon,* 68 Cal. 2d at 741. The mental distress suffered by plaintiffs not present at the scene of the accident is more akin to the anguish that any person feels after being informed of death or injury to a loved one. We agree with the court in *Cunningham,* that unless a reasonable limit on the scope of defendants' liability is imposed, defendants would be subject to potentially unlimited liability to virtually anyone who suffers mental distress caused by the despair anyone suffers upon hearing of the death or injury of a loved one. As one court stated:

> "'It would surely be an unreasonable burden on all human activity if a defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it. . . .'"

*Budavari v. Barry,* 176 Cal. App. 3d 849, 855, 222 Cal. Rptr. 446 (1986) (quoting *Scherr v. Hilton Hotels Corp.,* 168 Cal. App. 3d 908, 214 Cal. Rptr. 393 (1985)).

We conclude that mental suffering by a relative who is not present at the scene of the injury–causing event is unforeseeable as a matter of law. We reach this conclusion after balancing the interest of the injured party to compensation against the view that a negligent act should have some end to its legal consequences.

Other jurisdictions facing the issue raised by this case and which have adopted the foreseeability analysis comport with our holding. These cases require plaintiffs to either witness the injury–causing event or see the victim immediately after the accident. *Nancy P. v. D'Amato,* 401 Mass. 516, 517 N.E.2d 824 (1988); *Croft v. Wicker,* 737 P.2d 789 (Alaska 1987); *Tommy's Elbow Room, Inc. v. Kavorkian,* 727 P.2d 1038 (Alaska 1986); *Gates v. Richardson,* 719 P.2d 193 (Wyo. 1986); *Ochoa v. Superior Court,* 39 Cal. 3d 159, 703 P.2d 1, 216 Cal. Rptr. 661 (1985); *Waid v. Ford Motor Co.,* 125 N.H. 640, 484 A.2d 1152 (1984).

■ Turning to the facts before us, the record demonstrates that appellants were not present at the scene of the accident, as the plaintiffs concede. There are no facts in the record explaining whether plaintiffs did or did not see the

victim of the accident or view the accident scene immediately after the accident. Reply Brief of Appellants, at 6–7. While the appellants, in their brief, suggest that they learned of decedent's death by a live telecast during the evening news, they did not set forth these specific factual allegations in an affidavit as required by CR 56(e). Neither were these facts considered by the trial court nor are they in the record before us. On an appeal from a summary judgment, evidence that is absent from the materials considered by the trial judge cannot be considered on appeal. *Margoles v. Hubbart,* 111 Wn.2d 195, 199, 760 P.2d 324 (1988).

Based on this record, the trial court correctly dismissed plaintiffs' claim as it was unforeseeable as a matter of law that plaintiffs would suffer mental distress when they were not present at the scene of the accident.

## CONCLUSION

A defendant has a duty to avoid the negligent infliction of emotional distress. However, this duty does not extend to those plaintiffs who have a claim for mental distress caused by the negligent bodily injury of a family member, unless they are physically present at the scene of the accident or arrive shortly thereafter. Mental distress where the plaintiffs are not present at the scene of the accident and/ or arrive shortly thereafter is unforeseeable as a matter of law.

Here, the appellants were not present when their family member was struck by respondent's truck. Therefore, the trial court correctly dismissed the plaintiffs' claim for the negligent infliction of mental distress.

Affirmed.

CALLOW, C.J., and DOLLIVER, DURHAM, and SMITH, JJ., concur.

ANDERSEN, J., concurs in the result.

BRACHTENBACH, J. (concurring in result only; dissenting)—I concur only in the result reached by the majority.

Because I otherwise disagree with virtually the entire majority opinion, I dissent therefrom.

The holding in this case should be very narrow. Plaintiffs do not support a cause of action. Plaintiffs allege that they suffered emotional distress, but stipulate that they were not present at the scene of the collision which killed their son and brother. They show no cause of action with such a negative.

That should end the matter but the majority goes on to fashion a rule of law by deciding for all future cases what must be proved in this type of case. Parenthetically I suggest the majority is totally wrong in stating that stipulated facts cannot be considered as facts because not made on personal knowledge. Majority, at 256. Stipulated facts may be treated as such absent an issue of the authority of an attorney to stipulate to those facts. *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 303, 616 P.2d 1223 (1980).

The majority adopts an arbitrary rule; it requires that a plaintiff seeking recovery for mental distress must be "present at the scene of the accident and/or arrive shortly thereafter." Majority, at 261. How one can be present at the scene *and* arrive shortly thereafter escapes me.

The majority, without admitting the fact, overrules a major principle of *Hunsley v. Giard,* 87 Wn.2d 424, 436, 553 P.2d 1096 (1976). In *Hunsley* we emphasized foreseeability as an element in the determination of duty. We focused on a defendant's obligation to refrain from conduct as to those foreseeably endangered thereby. We held that a defendant has a duty to avoid the negligent infliction of mental distress. We held specifically that the question "[w]ho would be foreseeably endangered by defendant's conduct" was a jury question. *Hunsley,* at 436.

The majority casts aside this holding by its conclusion that the duty to avoid negligent infliction of emotional distress does not extend to plaintiffs who are not "physically present at the scene of the accident or arrive shortly thereafter."

The majority holds that mental distress is not foresee-able, *as a matter of law,* to one not present at the scene or who does not arrive shortly thereafter. Why that is true is never explained nor does the majority provide any rationale for its right to so hold as a matter of law.

To analyze the majority, we must turn to foreseeability. I initially must agree with the observation that "the concept of foreseeability so completely lacks all clarity and precision that it amounts to little more than a convenient formula for disposing of the case—usually by leaving it to the jury . . .." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 43, at 297 (5th ed. 1984) (hereinaf-ter *Prosser and Keeton*). The immense difficulty with the majority's use of lack of foreseeability, as a matter of law, is that the majority never discloses what it means by "fore-seeable." In the above quotation from *Prosser and Keeton* the term is used in the discussion of unforeseeable conse-quences but is relevant here.

If the majority means that the type of harm claimed is *factually* unforeseeable, I suggest it is simply wrong if it supposes that no reasonable person could anticipate that a father and a brother would suffer emotional distress upon learning of the death of the victim.

Because the majority relates unforeseeability to physical location, it must believe that mental distress *is foreseeable* if the plaintiff is present at the scene, or, according to the majority, at 260, it is even foreseeable if the plaintiff arrives "shortly thereafter." Dean Prosser is quite correct in stat-ing, in another context, that "when causation is found [the majority does not assert its absence], and other factors are eliminated [the majority suggests none], it is not easy to discover any merit whatever in the contention that such physical remoteness should of itself bar recovery." *Prosser and Keeton* § 43, at 283.

The majority does not advance any reason why it is enti-tled to deal with foreseeability as a matter of law. The majority ignores a fundamental rule of the law of negli-gence. "Generally in the United States it is for a jury to say

what the reasonable actor would foresee." 3 F. Harper, F. James & O. Gray, *Torts* § 16.10, at 482 (2d ed. 1986). As mentioned, the majority overrules the holding of *Hunsley* that what was the foreseeable risk of violation of a duty and who would be foreseeably endangered by that conduct were questions for the jury. *Hunsley,* at 436.

Perhaps the majority is trying to utilize an analysis of duty rather than a proximate cause theory. The majority makes a very curious ruling in three consecutive sentences in its conclusion. Majority, at 261. First it holds that a defendant has a duty to avoid the negligent infliction of emotional distress. It immediately next states that this duty does not extend to a claim for mental distress "caused by the *negligent* bodily *injury* of a family member" unless the plaintiffs are present or arrive shortly thereafter. (Italics mine.) Majority, at 261. If the injury is caused by negligence, there has to be a duty. If there is no duty, there is no negligence. Even within the confines of a single sentence the majority is at odds with its own language.

Maybe the majority is trying to hold as a matter of law that these defendants could not foresee the injuries to these plaintiffs. The majority holds clearly that a defendant could foresee mental distress caused to a person who was at the scene or arrived shortly thereafter. Thus the defendant could foresee an unreasonable risk of injury. "The very concept of negligence presupposes that the actor either does foresee an unreasonable risk of injury, or could foresee it if he conducted himself as a reasonably prudent person." 3 F. Harper, F. James & O. Gray, *Torts* § 16.5, at 397 (2d ed. 1986).

Is the majority saying that these are "unforeseeable plaintiffs" because they were not present at the scene or did not arrive immediately thereafter? Or is it the majority's ironclad assumption that these plaintiffs suffered "*unforeseeable injuries*"? *Prosser and Keeton* § 43.

Because the majority provides no analysis of the framework to which it applies its "unforeseeable as a matter of

law" conclusion, it is not possible to determine any principled basis for its conclusion. As Prosser points out: "The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Prosser and Keeton* § 53, at 357.

It is apparent that the majority wants to limit liability for emotional distress. It does so by a confusing mixture of ideas. There is ample authority to provide at least some reasoned principles to draw the artificial line which the majority draws without analysis or reasoning. *See Prosser and Keeton* § 54; 3 F. Harper, F. James & O. Gray, *Torts* § 18.4.

The majority here, and the Court of Appeals in *Cunningham v. Lockard,* 48 Wn. App. 38, 736 P.2d 305 (1987), expresses concern about "virtually unlimited liability" without an artificial boundary. *Hunsley v. Giard, supra,* was decided in 1976. Certainly the appellate courts have seen no proof of an explosive, "virtually unlimited liability." I prefer to continue with a faith in trial courts and juries to dispense appropriate justice, rather than create an unjust artificial rule based on some unsupported fear.

It is most interesting to compare the majority's conclusion to the following comment about liability for emotional distress. "It is submitted that these questions will be solved most justly by applying general principles of duty and negligence, and that mechanical rules of thumb that are at variance with these principles do more harm than good." (Footnote omitted.) 3 F. Harper, F. James & O. Gray, *Torts* § 18.4, at 704–05 (2d ed. 1986). It is significant to note that the main case cited in support of the quoted conclusion is *Hunsley v. Giard,* 87 Wn.2d 424, 553 P.2d 1096 (1976).

A few hypotheticals prove the illogic and injustice of the majority's ruling. On what principled theory does the law allow recovery to the mother who witnesses the death of her child by virtue of her physical presence at the scene, but denies it to a mother who contemporaneously sees the

identical event on a live television broadcast? What explanation will the law give in denying recovery to a father who arrives on the scene an hour after the impact, but still sees his son trapped in the wreckage? Certainly the majority's holding would be that the father did not arrive "shortly" thereafter. Indeed what does "shortly thereafter" mean? What magic elapse of time will be the dividing line? Yes, to the plaintiff who arrives 5 minutes later, but no, to the father who arrives 10, 20, or 30 minutes later?

What does the majority mean by "physically present at the scene"? Majority, at 257. Will the majority rule require visual observation of the event or mere physical presence? The issue is real. *See Krouse v. Graham,* 19 Cal. 3d 59, 562 P.2d 1022, 137 Cal. Rptr. 863 (1977); *Madigan v. Santa Ana,* 145 Cal. App. 3d 607, 193 Cal. Rptr. 593 (1983) (where court denied recovery to a parent who arrived 15 minutes after).

Is the emotional injury any less for the mother who learns by telephone within 5 minutes that her child has been killed than for the mother who by pure happenstance comes upon the scene within the same 5 minutes (presumably "shortly there–after").

There is another, but separate point which requires discussion. One of the fundamental issues in this type of case is determination of the class of persons whose peril causes the mental distress. In other words, what was the relationship of the plaintiff to the victim? That question should pose no issue here because the plaintiffs were father and brother of the decedent. If recovery is allowed, this relationship is a protected one. 3 F. Harper, F. James & O. Gray, *Torts* § 18.4, at 690 (2d ed. 1986).

Nonetheless, the majority causes substantial confusion for future cases. The majority haphazardly refers to the relationship as involving a "family member," a "loved one," a "relative," and the "victim." The majority provides no guidance as to the legal meaning of these imprecise and unnecessary categories. I assume that the majority's loose language will, someday, require us to decide whether a pet

is a family member or a loved one. There is a split of authority on that one. *Roman v. Carroll,* 127 Ariz. 398, 621 P.2d 307 (1980) holds no; *Campbell v. Animal Quarantine Station,* 63 Hawaii 557, 632 P.2d 1066 (1981) holds yes.

*Hunsley v. Giard, supra,* ruled on this precise point; its holding is gratuitously confused by the majority. We said:

> We decline to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress. This usually will be a jury question bearing on the reasonable reaction to the event unless the court can conclude as a matter of law that the reaction was unreasonable.

*Hunsley,* at 436.

The majority adds still more difficulty on a vital point, a point which is not at issue here, but is critical in any legitimate analysis. The question involves the physical location of the plaintiff in relation to the incident which allegedly caused mental distress. Courts have struggled with this physical proximity from the beginning. The cases have developed various approaches including the impact rule, the zone of danger, contemporaneous observation, and threat of immediate physical invasion. 3 F. Harper, F. James & O. Gray, *Torts* § 18.4, at 692–704 (2d ed. 1986); *Gates v. Richardson,* 719 P.2d 193, 199 (Wyo. 1986); *Hunsley v. Giard, supra* at 427–35.

The majority confuses this point by internally inconsistent holdings. At one point it denies recovery to a relative *who is not present at the scene.* Majority, at 257. Later, it refers to plaintiffs who either *witness* the event *or* see the victim *immediately* after the accident. Majority, at 260. Next it holds that the plaintiff must be *physically present* at the scene *or arrive shortly thereafter.* Majority, at 261. These imprecise criteria foretell future litigation to ascertain what the court meant.

The majority cites cases which it claims or at least implies support its holding. An examination of those cases casts doubt upon the majority's use of them as supporting authorities. Every case cited by the majority, except one, *permitted recovery* for emotional distress. To test the

validity of the majority's use of these cases they must be examined.

The one case denying liability is *Nancy P. v. D'Amato,* 401 Mass. 516, 517 N.E.2d 824 (1988). The court did state a rule that a parent must witness the injury or "come upon the injured child promptly after the injury." 401 Mass. at 520. However, the facts distinguish it totally. The plaintiff mother did not learn of the sexual abuse of her child until many months after its occurrence.

The majority should note another Massachusetts case which allowed recovery where the plaintiffs were never at the scene of the accident, but rushed to the hospital where they observed the physical injury. The court said: "A plaintiff who rushes onto the accident scene and finds a loved one injured has no greater entitlement to compensation for that shock than a plaintiff who rushes instead to the hospital. . . . the two types of injury are equally foreseeable." *Ferriter v. Daniel O'Connell's Sons, Inc.,* 413 N.E.2d 690, 697 (Mass. 1980). The majority's rule would deny recovery.

*Croft v. Wicker,* 737 P.2d 789 (Alaska 1987) allowed recovery when the parents did not observe the sexual touching of their daughter; indeed they were unaware of it until they observed their daughter's emotional reaction. The court allowed a cause of action because the parents were in close proximity when the event occurred. The court said that: "it is the reasonable foreseeability to the defendant of harm to the plaintiff that generates the defendant's duty to exercise reasonable care." *Croft,* at 792.

The majority cites *Waid v. Ford Motor Co.,* 125 N.H. 640, 484 A.2d 1152 (1984). It is no authority at all for the majority's position. The sole issue was whether an earlier case was retroactive. The earlier case, *Corso v. Merrill,* 119 N.H. 647, 406 A.2d 300 (1979) rejected the "zone of danger" rule. The court in *Waid* acknowledged that the cause of action allowed recovery in narrow instances "where the

defendant could have reasonably foreseen that his carelessness would cause others acute emotional distress." *Waid,* at 641.

The case of *Tommy's Elbow Room, Inc. v. Kavorkian,* 727 P.2d 1038 (Alaska 1986), cited by the majority, is an interesting illustration that a rigid rule, adopted by the majority, is unjust and unwise. A father drove by an accident scene, not realizing that his daughter was a passenger in one of the cars. When he arrived home his daughter was not there. After talking to his wife, he drove back to the scene of the accident, where workers were removing his daughter from the car. The court did not even mention the time frame, *i.e.,* the "arrive shortly thereafter" holding of the majority. The court rejected a strict application of *Dillon v. Legg,* 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72, 29 A.L.R.3d 1316 (1968), *relied on by the majority here.* The court said: "The touchstone of *Dillon* is not a rigid requirement of sensory and contemporaneous observance of the accident, but rather is the reasonable foreseeability that the plaintiff–witness would suffer emotional harm." *Tommy's Elbow Room, Inc.,* at 1043. The court continued, "[w]e cannot say as a matter of law that it was not reasonably foreseeable that he [the father–plaintiff] would appear at the scene of the accident." *Tommy's Elbow Room, Inc.,* at 1043. The majority cites this case as support, but the majority's rule would deny the recovery allowed in that case.

*Gates v. Richardson,* 719 P.2d 193 (Wyo. 1986) does adopt a limitation that the plaintiff must either witness the accident or soon come upon the scene while the victim is still there—a different holding than the majority's rule. The court, however, rejected the approach taken by the majority here. The Wyoming court cited favorably *Hunsley v. Giard, supra,* and wisely noted: "But when we say the harm to the plaintiff is too remote to fall within a legal duty owed by the defendant, we are stating a conclusion, not applying a test." *Gates,* at 196. How true; too bad the majority fails to recognize this fact.

It is inappropriate for the majority to cite *Ochoa v. Superior Court,* 39 Cal. 3d 159, 703 P.2d 1, 216 Cal. Rptr. 661 (1985) as supporting its holding. The primary issue there, *as stated by the court,* was whether "the child's injury must have been the result of a brief and sudden occurrence viewed contemporaneously by the plaintiff." *Ochoa,* at 167. That is, was there a *sudden* occurrence? The court allowed recovery for emotional distress where the mother observed, *over a period of days,* the medical neglect of her child.

Finally, it is necessary to call attention to the majority's wholly unwarranted quote from *Dillon v. Legg, supra,* and even its reference to a point "as noted in *Dillon.*" Majority, at 259. The majority cites *Dillon* as though it were still the law. The majority should read *Thing v. La Chusa,* 48 Cal. 3d 644, 771 P.2d 814, 257 Cal. Rptr. 865 (1989). In *Thing* the 4–member majority severely limits the *Dillon* guidelines quoted by the majority herein. A concurring opinion urges that "*Dillon's Arbitrary Approach Should Be Overturned*". *Thing,* 48 Cal. 3d at 675 (Kaufman, J., concurring). Justice Mosk in dissent states that "[a]lthough the majority do not forthrightly overrule *Dillon* v. *Legg* . . . their preference is evident." *Thing,* 257 Cal. Rptr. at 887. I agree with the dissent in *Thing* that "[t]he answer to the question of how this court should limit liability does not lie in the majority's rigid application of *Dillon* and the toleration of arbitrary results that will flow therefrom." *Thing,* 48 Cal. 3d at 684 (Broussard, J., dissenting).

Finally, I restate my initial point that this case should be decided on a very narrow ground. No matter how we treat the defendants' motion, whether as a CR 12(b)(6) or a CR 56, it is patently clear that all plaintiffs established was (1) a claimed suffering of mental distress and (2) that they were not present when the victim was killed. This leaves a complete VOID as to an essential element of a cause of action, *i.e.,* how and when did plaintiffs learn of the death? Those facts are essential to a valid determination whether it was reasonably foreseeable that plaintiffs so situated

might suffer emotional distress. Only with such facts should the court decide whether those "how and when" facts justify denial of recovery as a matter of policy or whether those facts raise a jury issue of foreseeability. The unfortunate result of the majority's holding is that it forecloses future plaintiffs from a chance at recovery unless they meet the fortuitous circumstances of being "present . . . or arriv[ing] shortly thereafter." Majority, at 261.

One sentence, written by the late Dean Prosser, expresses my belief:

> If it is unjust to the defendant to make the defendant bear a loss which the defendant could not have foreseen, it is no less unjust to the plaintiff to make the plaintiff bear a loss which the plaintiff too could not have foreseen, and which is not even due to the plaintiff's own negligence.

*Prosser and Keeton* § 43, at 287.

I would affirm, but on the very narrow basis expressed above.

UTTER, J., and PEARSON, J. Pro Tem., concur with BRACHTENBACH, J.