Merrick, J.
After the defendant was defaulted in this motor vehicle tort action, the trial judge conducted a hearing for the assessment of damages, at which the defendant’s accident reconstruction expert testified. The trial judge found in favor of the defendant, and the plaintiff filed this appeal. There was no error.
The complaint sets forth the conclusory allegations that the plaintiff, Peter Njunge (“Njunge”), suffered personal injuries and property damage to his car “as a result of the negligent and careless operation” of the vehicle driven by the defendant, Matthew Engram (“Engram”), and that Engram operated his vehicle “so as to cause his motor vehicle to strike the rear end of [Njunge’s] vehicle” in Brockton on June 11,2005. A default was entered against Engram on June 23,2006 for his failure not only to answer interrogatories timely, but also to appear for his deposition on June 15,2006. Engram’s motion to remove the default was denied by another judge. At the damages assessment hearing in December, 2006, Njunge testified that on June *94 11,2005, his car was struck in the rear by Engram’s vehicle and that he was treated at a hospital emergency room immediately after the accident On June 16, 2005, Njunge’s attorney filed a claim with Arbella Insurance (“Arbella”), Engram’s insurer. On June 17, 2005, Njunge began treatment at Barbati Chiropractic. Although his testimony about the chronology of his treatment might be characterized as evasive, it appears that Njunge was initially treated three times a week, then twice, and finally once a week. He stopped the chiropractic treatment in October, 2005, but resumed it in May, 2006.
In May, 2006, Robert A DiTullio, MD (“DiTullio”) examined Njunge in preparation for a report to Njunge’s attorney. DiTullio ordered an MRI, prescribed Motrin, and charged $635.00 for his services. The MRI, performed by Shields MRI, was negative, and cost $1,800.00. Barbati Chiropractic charged $4,256.00 for the treatment it provided. Based on Njunge’s subjective complaints, the diagnosis was soft tissue injury.
Njunge’s expert, an automobile body shop owner, testified at the assessment hearing that he had examined and appraised the damage to Njunge’s car, and had also reviewed photographs of Engram’s vehicle. He estimated that the cost of repairing Njunge’s car was $4,632.29, and opined that the car damage was consistent with it having been caused by Engram’s vehicle. The witness denied that he had reached an “agreed figure” with Engram’s insurer of $2,500.00 to repair the car.
Njunge’s attorney then objected, on the ground of lack of advance notice, to Engram calling as a witness one Mitchell, an accident reconstruction expert The trial judge suspended the assessment hearing for three weeks to give Njunge’s attorney time to prepare. When the hearing resumed, Mitchell testified that he did not see either vehicle, but based his opinion on photographs of the vehicles and on his examination of “exemplar” vehicles of the same make and model. Mitchell concluded that the height of Engram’s vehicle would have prevented it from causing damage to Njunge’s car at the location on the car where Njunge claimed there was accident damage.
After the hearing, the judge found that he “ [could] not conclude that the accident occurred as described by the plaintiff’ and that “[t]he plaintiff ha [d] not established that he suffered injuries as a result of actions of the defendant.” Judgment was entered in favor of Engram.
1. Njunge objected on the first day of the assessment hearing to the admission of testimony by Mitchell, Engram’s expert, on two grounds: first, that Engram had not given sufficient notice of the witness, and second, that Mitchell’s testimony was irrelevant because liability had been established by Engram’s default As to the first contention, a judge has broad discretion in admitting the testimony of lately disclosed experts. Derby Ref. Co. v. Chelsea, 407 Mass. 703, 716 n.11 (1990). Njunge himself had not given much more notice of his own expert. Further, the court continued the assessment hearing for three weeks, affording Njunge sufficient time to prepare for what was not very complicated testimony on a subject already dealt with by his own expert
As to relevance, the mechanics of how an accident occurred certainly bear on the subject of what injuries or damages might have been caused. Rule 55 (b) (2) of the Mass. R. Civ. E provides that a judge conducting an assessment of damages hearing may, in his or her discretion, find it necessary “to establish the truth of any averment by evidence.”
2. Njunge has also objected on this appeal to the very idea of entering judgment after an assessment hearing in favor of a defaulted defendant. The Supreme Judicial Court has adopted the view of the United States Court of Appeals for the Fifth Circuit, however, “that a default merely establishes the truth of factual allegations and does not operate ‘as an absolute confession by the defendant of his liability and *95 of the plaintiffs right to recover.’” Productora e Importadora de Papel, S.A. de C.V. v. Fleming, 376 Mass. 826, 834 (1978), quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). A default admits only “well-pleaded facts.” Nancy P. v. D’Amato, 401 Mass. 516, 519 (1988). “[E]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.” Productora e Importadora de Papel S.A. de C.V., supra at 834-835, citing 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure §2688, at 282 (1972). See Bissanti Design/Build Group v. McClay, 32 Mass. App. Ct. 469, 470-471 (1992) (at assessment hearing after default, defendants may show that plaintiff’s work was faulty and worth less than alleged). Viewed in its entirety, the evidence in this case viewed in its entirety warranted the court’s finding for Engram.
Judgment affirmed. Appeal dismissed.
So ordered.