[No. 33296. Department One. April 26, 1956.]

GRACE M. BRILLHARDT, *Respondent*, v. BEN TIPP, INC., *Appellant.*[1]

[1] Reported in 297 P. (2d) 232.

*Robbins & Robbins,* for appellant.

*Harold J. Miller,* for respondent.

OTT, J.—In August, 1951, the defendant, Ben Tipp, Inc., began to use a new supply of one thousand twenty sales books, each containing fifty sets of sales slips in triplicate, upon which the telephone number of plaintiff Brillhardt's place of business had been printed by mistake. After the defendant started using the sales books, frequent calls for the defendant's store came to the plaintiff's business office.

Plaintiff discovered the mistake when one of the callers insisted that the number called was on the defendant's sales slip. The plaintiff promptly called the defendant corporation and complained of her annoyance and inconvenience. Shortly thereafter, a representative of defendant's printer contacted plaintiff and asked her to relinquish the number so that the mistake could be rectified. Plaintiff refused. The printer's representative threatened to have the telephone company take the number, and, subsequently, a telephone company representative solicited plaintiff to relinquish her number voluntarily. She again refused, and explained at the trial that her reason was the fact that she had been in the real-estate business in Seattle for sixteen years, during which time her telephone number had been printed upon her advertising and stationery.

Thereafter, plaintiff contacted the defendant's representatives by telephone several times, informing them of her continued annoyance. December 21, 1953, in writing, she again complained and made demand for payment of her damages. After receipt of the letter by the defendant, the erroneous number allegedly was drilled out of the remaining sales slips. However, approximately twenty-five thousand

sales slips had been put into circulation prior thereto. The calls for the defendant's store continued to annoy and harass the plaintiff. April 14, 1954, a cash purchase was made at the defendant's store, and the slip given to the customer contained the plaintiff's telephone number.

Plaintiff commenced this action to recover in damages for her alleged annoyance and inconvenience. The case was tried to the court. Findings of fact, conclusions of law, and a judgment awarding the plaintiff one thousand dollars damages were entered. The defendant has appealed.

Appellant's first assignment of error is directed to the court's finding No. 3. We are committed to the rule that the trial court's findings of fact will be accepted as the established facts, unless the evidence preponderates against them. *McKown v. Davis*, 47 Wn. (2d) 10, 15, 285 P. (2d) 1048 (1955), and cases cited.

Appellant contends that, by this finding, the court inferred that the appellant was responsible for the requests by the printer and the telephone company that respondent voluntarily relinquish her telephone number. We do not agree. The mere fact that the printer and the telephone company made such requests to the respondent does not give rise to an inference of agency. The action taken by the printer and the telephone company was testified to by the respondent and was received in evidence without objection. Neither the representative of the printer nor anyone representing the telephone company was called to refute respondent's testimony. Respondent at no time claimed or inferred that these parties were acting as agents of the appellant. She merely related the occurrences to the court as they had developed subsequent to her complaint to the appellant. Although this particular finding of fact was not necessary to respondent's cause of action, it is supported by undisputed testimony. The court did not commit reversible error by including these facts in its findings.

We find no merit in this assignment of error.

Appellant next assigns error to finding of fact No. 4, particularly objecting to that portion which reads as follows:

"That the great number of phone calls which came in very frequently to the plaintiff for the defendant resulted from a dissemination of the said business forms of the defendant to the public and that as a result thereof the plaintiff herein has suffered and will suffer for an indefinite time into the future annoyance and personal discomfort in the sum of $1,000.00."

The appellant cites *Arnold v. Sanstol*, 43 Wn. (2d) 94, 260 P. (2d) 327 (1953), in support of its contention that, because (1) the respondent produced only circumstantial evidence as to the cause of the telephone calls, and (2) the calls could be explained logically in another manner, the inference from the circumstantial evidence was not sufficient to establish proximate cause. In *Arnold v. Sanstol, supra,* we said [p. 99]:

"When reliance is placed upon the latter type of evidence [circumstantial], there must be reasonable inferences to establish the fact to be proved. No legitimate inference can be drawn that an accident happened in a certain way by simply showing that it might have happened in that way, without further showing that reasonably it could not have happened in any other way. The facts relied upon to establish a theory by circumstantial evidence must be of such a nature and so related to each other that it is the only conclusion that fairly or reasonably can be drawn from them. A verdict cannot be founded on mere theory or speculation. If there is nothing more tangible to proceed upon than two or more conjectural theories, under one or more of which a defendant would be liable, and under one or more of which there would be no liability upon him, a jury will not be permitted to conjecture how the accident occurred. [Citing cases.]"

The appellant's office manager testified that the slips were put into circulation August 31, 1951. The respondent testified as follows:

"Now, referring to the early part or on or about April 1st, 1952, in regard to your telephone, will you tell the Court what took place? . . . Q. After that time what happened with regard to your telephone? A. Well, I began getting calls. Q. What kind of calls? A. Just phone calls; sometimes they would ask for Ben Tipp; sometimes they would start talking about the merchandise and I would have

to listen, and as soon as I could I would tell them about their mistake. . . . Q. Now, referring to the time of the year around December, 1952, what was the condition of the situation at that time with regard to your telephone? A. The phone calls were very numerous, and especially after the holidays, people wanting to return their merchandise or make changes. Q. How numerous were the telephone calls? A. Sometimes as many as twenty in a day. . . . Q. Now, during the course of time that you have been in business, I assume you have had many, many wrong numbers come in to your office? A. Not many. THE COURT: I presume you mean wrong telephone calls. MR. ROBBINS: Yes, wrong telephone calls. Your Honor is correct. THE COURT: And the answer was, 'Not many'? THE WITNESS: Only these."

The theory presented by respondent is the only *reasonable* theory to be derived from the facts. In such an instance, the rule of *Arnold v Sanstol, supra,* allows circumstantial evidence to establish proximate cause. However, it should be noted that in the recent case of *Mason v. Turner, ante* p. 145, 291 P. (2d) 1023 (1956), we announced that the rule with reference to circumstantial evidence in civil cases is that, when there are two or more conjectural theories, under one or more of which there would be liability and under one or more of which there would be no liability, the jury will not be permitted to determine the facts by resorting to conjecture. Proof to a degree of absolute certainty is not necessary. It is sufficient if the minds of reasonable men could determine that there is a *greater probability* that the event happened in such a way as to fix liability upon the person charged therewith, than that the event happened in such a way that no liability attaches. *Home Ins. Co. v. Northern Pac. R. Co.,* 18 Wn. (2d) 798, 140 P. (2d) 507, 147 A. L. R. 849 (1943); *Gardner v. Seymour,* 27 Wn. (2d) 802, 180 P. (2d) 564 (1947).

Clearly, under this more liberal rule, respondent's evidence was sufficient to establish proximate cause. We find no merit in this assignment of error.

Appellant next assigns error to the court's conclusion that the respondent was entitled to judgment in the sum of one

thousand dollars, and to the trial court's ruling denying appellant's motion for a new trial, or, in the alternative, for judgment notwithstanding the court's oral decision.

In support of this assignment, appellant cites *Corcoran v. Postal Telegraph-Cable Co.*, 80 Wash. 570, 142 Pac. 29 (1914), and *Kneass v. Cremation Society of Washington*, 103 Wash. 521, 175 Pac. 172, 10 A. L. R. 442 (1918), where we held that "there could be no recovery for mental suffering and anguish caused by negligence where no physical injury was inflicted and no pecuniary loss resulted."

In neither the *Corcoran* case nor the *Kneass* case was there any physical invasion of the plaintiff's property or property rights. There was merely mental anguish resulting from the emotional impact of the defendant's negligent act. In the case at bar, there is an additional factor. The distribution by the appellant of approximately twenty-five thousand sales slips containing the respondent's telephone number resulted in an actual invasion of the respondent's right to enjoy her property without unreasonable interference.

In *Riblet v. Spokane-Portland Cement Co.*, 45 Wn. (2d) 346, 274 P. (2d) 574 (1954), this court was concerned with the personal discomfort and annoyance suffered by the plaintiffs due to dust falling upon their property from the defendant's cement plant. We there cited, with approval, the rule set out in 142 A. L. R. 1322 that, with regard to annoyance and discomfort resulting from a nuisance,

"In most jurisdictions the rule is that the personal damages are recoverable in addition to, or separate from, damages for diminution in rental or use value."

The right to recover damages resulting from personal discomfort and annoyance, as distinguished from property damages, has been recognized by this court, and the fact that the damages "do not involve actual bodily injury or illness indicates a difference only in the degree or amount of damage sustained." *Riblet v. Spokane-Portland Cement Co.*, *supra*, p. 353, and cases cited.

There is substantial evidence that the telephone calls for the appellant constituted an annoyance to the respondent from April, 1952, to the date of trial. The amount of

damages to compensate the respondent adequately for more than two years of wrongful annoyance and inconvenience rested in the sound discretion of the trial court. From the record before us, we cannot say that the court abused its discretion in awarding the amount allowed.

■■ Appellant contends that the trial court allowed damages for future or prospective invasions of respondent's rights, and that such allowance was error. The damages here awarded were not for continuing invasions by the appellant, but for a completed wrong committed by the appellant, the results of which will continue in the future. The respondent had but one cause of action against the appellant. All damages arising therefrom must be recovered in a single suit. *Sprague v. Adams,* 139 Wash. 510, 247 Pac. 960, 47 A. L. R. 529 (1926).

This assignment of error is without merit.

The judgment is affirmed.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.