[No. 86912-0.    En Banc.]
Argued May 8, 2012.    Decided January 31, 2013.

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

IN

EDWARD J. BYLSMA, *Plaintiff-Appellant*, v. BURGER KING
CORPORATION ET AL., *Defendants-Appellees*.

*James T. Yand* (of *Miller Nash LLP*); and *Darrin E. Bailey* and *Danford D. Grant* (of *Bailey Onsager PC*), for plaintiff-appellant.

*Barry J. Goehler* (of *Law Office of Barry J. Goehler*) and *Gary M. Bullock* (of *Gary M. Bullock & Associates PC*), for defendants-appellees.

¶1 GONZÁLEZ, J. — Clark County Deputy Sheriff Edward Bylsma seeks to proceed to trial and recover damages from Burger King Corporation under the Washington product liability act (WPLA), chapter 7.72 RCW, for his claim that he suffers ongoing emotional distress from discovering that he was served a burger with phlegm inside the bun. In a certified question, the Ninth Circuit Court of Appeals asks us to determine whether the WPLA permits relief for emotional distress damages, in the absence of physical injury, caused to the direct purchaser by being served and touching, but not consuming, a contaminated food product. We answer that the WPLA permits relief in such circumstances, but only if the emotional distress is a reasonable reaction and manifest by objective symptomatology.

## I. Facts and Procedural History

¶2 On March 29, 2009, Clark County Deputy Sheriff Edward J. Bylsma drove his marked police cruiser through the drive-through of a Burger King that is operated by Kaizen Restaurants in Vancouver, Washington. Bylsma ordered a Whopper with cheese and drove away with an uneasy feeling after receiving his burger. He pulled into another parking lot down the street, lifted the top bun, and observed what appeared to be a glob of spit on the meat patty. He inserted his finger into the glob to confirm it was not fat. Later DNA (deoxyribonucleic acid) testing revealed the saliva belonged to one of the employees working at the time.

¶3 Bylsma brought suit against Burger King and Kaizen Restaurants in the United States District Court for the

District of Oregon, raising claims under Oregon law for product liability, negligence, and vicarious liability. Bylsma claims that he suffers ongoing emotional distress, including vomiting, nausea, food aversion, and sleeplessness. These symptoms have led him to seek treatment from a mental health professional.

¶4 Burger King moved for judgment on the pleadings. Magistrate Judge Papak issued findings and recommendations and recommended Burger King's motion be granted. The magistrate judge found that Washington law applies, the WPLA preempts all other causes of action, and the WPLA does not allow for recovery of emotional distress damages caused to a purchaser in the absence of physical injury. District Court Judge Marsh adopted the magistrate judge's findings and recommendations and dismissed the case.

¶5 Bylsma appealed to the Ninth Circuit. Bylsma does not dispute that Washington law applies or that the WPLA preempts other potential causes of action but argues that emotional distress damages absent physical injury are recoverable under the WPLA. Opening Br. at 1. Because this issue is central to the outcome of the case and its resolution may have far-reaching effects in Washington, the Ninth Circuit seeks our guidance. Order Certifying Question at 129-30.

## II. Standard of Review

¶6 Certified questions from federal courts are pure questions of law that we review de novo. *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 799, 231 P.3d 166 (2010). This certified question involves interpreting the WPLA. In interpreting a statute, our primary aim is to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

### III. Analysis

¶7 The WPLA, enacted in 1981, created a single cause of action to provide relief for "harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of [a] product." RCW 7.72.010(4); *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 853-56, 860, 774 P.2d 1199, 779 P.2d 697 (1989). A "product liability claim" under the WPLA preempts any claim or action that previously would have been based on any "substantive legal theory except fraud, intentionally caused harm or a claim or action brought under the consumer protection act, chapter 19.86 RCW." RCW 7.72.010(4); *see Graybar*, 112 Wn.2d at 860; *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 323, 858 P.2d 1054 (1993); *La.-Pac. Corp. v. ASARCO Inc.*, 24 F.3d 1565, 1584 (9th Cir. 1994). Under the WPLA, if "the claimant's harm was proximately caused by the fact that [a] product was not reasonably safe in construction," then the product manufacturer is strictly liable. RCW 7.72.030(2). A product is not reasonably safe in construction only if "when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance standards [or] from otherwise identical units of the same product line," with the trier of fact "consider[ing] whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary customer." RCW 7.72.030(2)(a), (3). The WPLA establishes separate standards for claims based on defective design or inadequate warnings or instructions, which are not at issue here. RCW 7.72.030(1).

¶8 Although much of the WPLA was taken from the Model Uniform Product Liability Act (UPLA), 44 Fed. Reg. 62,713 (Oct. 31, 1979), the legislature chose not to use the UPLA's definition of "harm." SENATE JOURNAL, 47th Leg., Reg. Sess., at 630 (Wash. 1981); *Fisons*, 122 Wn.2d at 319-20. The

UPLA defines "harm" to include "mental anguish or emotional harm" only if "attendant to . . . personal physical injuries" or "caused by . . . being placed in direct personal physical danger and manifested by a substantial objective symptom." 44 Fed. Reg. at 62,717. In contrast, RCW 7.72.010(6) more broadly defines "harm" as "any damages recognized by the courts of this state [except for] direct or consequential economic loss under Title 62A RCW." The legislature intended to allow for the "continuing development of the term through case law." SENATE JOURNAL at 630; *Fisons*, 122 Wn.2d at 320.

¶9 Under the WPLA's definition of "harm," we look to Washington case law to determine whether the damages in question are "recognized by the courts of this state." RCW 7.72.010(6). Because the WPLA does not require proof of intent and does not preempt claims based on intentional conduct, we will focus on strict liability and negligence cases for guidance. *See Fisons*, 122 Wn.2d at 321.

¶10 In deciding whether to allow damages for emotional distress in the absence of physical injury, Washington courts have balanced the right to compensation for emotional distress against competing interests in preventing fraudulent claims and ensuring that tortfeasors are held responsible only insofar as is commensurate with their degree of culpability. We have not addressed emotional distress damages absent physical injury in the context of a strict liability claim. In negligence cases, however, we allow claims for emotional distress in the absence of physical injury only where emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology. *Hunsley v. Giard*, 87 Wn.2d 424, 433, 436, 553 P.2d 1096 (1976). These requirements were developed to address past concerns that feigned claims of emotional distress would lead to " 'intolerable and interminable litigation.' " *Corcoran v. Postal Tel.-Cable Co.*, 80

Wash. 570, 579, 142 P. 29 (1914) (quoting *Peay v. W. Union Tel. Co.*, 64 Ark. 538, 544, 43 S.W. 965 (1898)). The scope of foreseeable harm of a given type of conduct depends on " 'mixed considerations of logic, common sense, justice, policy, and precedent.' " *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974) (quoting Thomas Atkins Street, The Foundations of Legal Liability 110 (1906)); *see also Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 52, 176 P.3d 497 (2008) (limiting the reasonably foreseeable class of plaintiffs who can recover for emotional distress caused by injury to a third party). We have permitted recovery in the absence of physical injury, for example, where undertakers improperly buried an infant child, *Wright v. Beardsley*, 46 Wash. 16, 89 P. 172 (1907), where a defendant inadvertently printed plaintiff's telephone number on its sales slips causing the plaintiff to be harassed by telephone calls, *Brillhardt v. Ben Tipp, Inc.*, 48 Wn.2d 722, 297 P.2d 232 (1956), and where a funeral home failed to provide ashes in a burial urn and the decedent's mother hand sifted through the ashes, mistaking them for packing material, *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 962, 577 P.2d 580 (1978). Although none of these cases involved contaminated food in particular, each concerned emotionally laden personal interests, and emotional distress was an expected result of the objectionable conduct in each case. Common sense tells us that food consumption is a personal matter and contaminated food is closely associated with disgust and other kinds of emotional turmoil. Thus, when a food manufacturer serves a contaminated food product, it is well within the scope of foreseeable harmful consequences that the individual served will suffer emotional distress. The courts of this state recognize damages for such emotional distress, and thus, such damages, if proved, are recoverable under the WPLA.

## IV. Conclusion

¶11 We answer the certified question in the affirmative. The WPLA permits relief for emotional distress damages, in

the absence of physical injury, caused to the direct purchaser by being served and touching, but not consuming, a contaminated food product, if the emotional distress is a reasonable response and manifested by objective symptomatology.

C. JOHNSON, FAIRHURST, STEPHENS, and WIGGINS, JJ., and CHAMBERS, J. PRO TEM., concur.

¶12 J.M. JOHNSON, J. (dissenting) — Deputy Sheriff Edward J. Bylsma was served a burger contaminated with spittle. Fortunately, Deputy Bylsma discovered the spittle before consuming the burger. For this, the responsible Burger King employee was charged and pleaded guilty to felony assault and was sentenced to 90 days in jail.

¶13 Now, Deputy Bylsma claims he was so traumatized by the spittle (which he did not consume) that he suffers from ongoing emotional distress, manifested by vomiting, nausea, food aversion, and sleeplessness. Deputy Bylsma sued Burger King and the restaurant operator, Kaizen Restaurants, to compensate him for this alleged distress. Because Washington law proscribes relief for emotional distress damages in the absence of physical injury when a claimant brings a products liability claim, I dissent.

ANALYSIS

I.  Emotional Distress Damages Are Not Available for a Statutory Cause of Action Unless the Statute Expressly Provides for Them or the Statute Requires Proof of Intentional Conduct

¶14 Enacted in 1981, the Washington product liability act (WPLA) "created a single cause of action for product-related harms," taking the place of most previously existing

common law remedies.[1] *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 322, 858 P.2d 1054 (1993); RCW 7.72.010. The WPLA was the product of years of legislative efforts to find a solution to the serious problem of "[s]harply rising premiums for product liability insurance," which were "increas[ing] the cost of consumer and industrial goods. . . ." LAWS OF 1981, ch. 27, § 1; *see also* Philip A. Talmadge, *Washington's Product Liability Act*, 5 U. PUGET SOUND L. REV. 1, 1-6 (1981) (detailing the failed legislative attempts and negotiations that preceded the WPLA's passage). The legislature intended the WPLA to address this problem by, inter alia, reducing uncertainty for underwriters through the "establish[ment] [of] clear guidelines for the assertion of a product liability cause of action . . . ." *Id.* at 6.

¶15 Among other things, the WPLA holds product manufacturers strictly liable if "the claimant's harm was proximately caused by the fact that [a] product was not reasonably safe in construction . . . ." RCW 7.72.030(2). The WPLA defines "harm" as "any damages recognized by the courts of this state . . . ." RCW 7.72.010(6). Accordingly, we must look to our decisional law to determine whether the WPLA allows recovery predicated solely on emotional distress. The question becomes: Under Washington law, is a consumer entitled to emotional distress damages when a fast-food employee spits in his or her hamburger even though the consumer did not eat the hamburger?

¶16 This analysis proves somewhat circular; to determine whether emotional distress damages are available for a statutory cause of action (such as a WPLA claim), our case law instructs us to look to the statute first. *White River Estates v. Hiltbruner*, 134 Wn.2d 761, 765, 953 P.2d 796 (1998) ("Whether emotional distress damages are available

---

[1] Common law claims for "fraud, intentionally caused harm, or a claim or action brought under the consumer protection act" were preserved as independent causes of action. RCW 7.72.010(4); *accord Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 850, 774 P.2d 1199, 779 P.2d 697 (1989).

following a statutory violation will depend on the language of the particular statute at issue."). If the statute is silent, emotional distress damages are available "only if the violation sounds in intentional tort."[2] *Id.* at 766. "The focus is not on the particular facts of the case[, which may involve intentional conduct,] but whether the statutory violation requires proof of an intentional tort." *Id.* at 769.

¶17 Because the statute in question here, the WPLA, defines "harm" by referencing our case law, we must first review our cases to determine if the statute allows for emotional distress damages in this scenario. Our only case to address the availability of emotional distress damages under the WPLA is *Fisons*, 122 Wn.2d 299.

¶18 In *Fisons*, a physician prescribed for a child patient a medication manufactured by the defendant that caused the child to suffer seizures and permanent brain damage. *Id.* at 307. The physician sought emotional distress damages from the drug company under the WPLA. *Id.* at 309. In the absence of directly applicable case law, we looked to negligent infliction of emotional distress (NIED) cases for guidance.[3] *Id.* at 320. In doing so, we observed a trend: "Generally, in cases where emotional distress is not a consequence of physical injury, or caused by intentional conduct, Washington courts have been cautious about extending a right to recovery." *Id.* "If the law were otherwise," we said, "liability would potentially be endless." *Id.* at 320-21. We were concerned with "substantially extending

---

[2] The majority is accurate when it says that "[w]e have not addressed" the specific scenario of a claimant requesting "emotional distress damages absent physical injury in the context of a strict liability claim." Majority at 560. As is discussed here, however, we have addressed the availability of emotional distress damages for statutory violations.

[3] The *Fisons* court did so because it was operating under the assumption that a WPLA claim may involve negligence. *See Fisons*, 122 Wn.2d at 321 ("In a product liability claim, liability can be predicated on negligence or even on strict liability."). RCW 7.72.030(1) uses the word "negligence" while articulating strict liability principles. In *Ayers v. Johnson & Johnson Baby Products Co.*, we clarified that " 'negligence' as used in RCW 7.72.030(1) does not mean common law negligence . . . . It means 'negligence-like'." 117 Wn.2d 747, 762, 818 P.2d 1337 (1991). "[T]he test for design defects . . . is one of strict liability." *Id.*

our prior law regarding when a plaintiff could recover emotional distress damages caused by the physical injuries of a third person" and therefore held the plaintiff's "emotional pain and suffering [were] not recoverable under . . . the product liability act." *Id.* at 321-22.

¶19 Presumably, the majority disregards the *Fisons* analysis because that case involved the emotional distress of a third party witness to another's injuries, whereas here, Deputy Bylsma claims he was directly injured by the defective product. Yet, even if we assume *Fisons* does not speak to the availability of emotional distress damages under the circumstances of this case, then the WPLA, which references case law, is "silent" as to whether emotional distress damages are available. *See Hiltbruner*, 134 Wn.2d at 766. Accordingly, such damages are available only if the WPLA requires proof of intentional conduct to impose liability. *Id.* at 768.

¶20 Requiring far less than intent, a WPLA claim brought against a manufacturer is rooted in strict liability. RCW 7.72.030(2); *accord Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 761-63, 818 P.2d 1337 (1991). Strict liability "does not depend on actual negligence or intent to harm" but is "based on the breach of an absolute duty to make something safe." BLACK'S LAW DICTIONARY 998 (9th ed. 2009). Thus, because the WPLA does not require proof of an intentional tort, emotional distress damages are unavailable. *See Hiltbruner*, 134 Wn.2d at 768.

¶21 Moreover, prior to the WPLA's enactment, Washington courts had adopted section 402A of the *Restatement (Second) of Torts* (1965) in product liability actions. *See, e.g., Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969). Section 402A provides in relevant part, "One who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for *physical harm* thereby caused to the ultimate user or consumer." RESTATEMENT (SECOND) OF TORTS § 402A (emphasis added). The WPLA expressly states that "[t]he previous existing appli-

cable law of this state on product liability is modified only to the extent set forth in this chapter." RCW 7.72.020(1). By defining "harm" as "any damages recognized by the courts of this state," the common law rules regarding damages were both preserved and allowed to develop. *See* Talmadge, *supra*, at 10 (1981). Thus, even before the enactment of the WLPA, Washington products liability law explicitly extended only to "physical harm." Because the WPLA did not alter the state of the common law as to recognized harms, emotional distress damages remain unavailable under that law.

¶22 The majority correctly notes that the legislature intended to allow for the " 'continuing development' " of "harm" under the WLPA " 'through case law.' " Majority at 560 (quoting SENATE JOURNAL, 47th Leg., Reg. Sess., at 630 (Wash. 1981)). If it is the majority's intention to overturn *Hiltbruner* and reject the *Restatement (Second) of Torts*, they must first show how our established rule rejecting emotional distress damages in this context is "incorrect and harmful" before they can abandon it. *See Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 278, 208 P.3d 1092 (2009) ("In Washington, stare decisis protects reliance interests by requiring a 'clear showing that an established rule is incorrect and harmful before it is abandoned.' " (internal quotation marks omitted) (quoting *State v. Devin*, 158 Wn.2d 157, 168, 142 P.3d 599 (2004))). The majority makes no such showing and likely would be unable to do so. Ensuring the financial compensation of people claiming emotional distress because they saw spit on their uneaten hamburgers is not a public policy priority.

II. Analogizing to NIED Cases Does Not Instruct That Emotional Distress Damages Are Available Here Because Deputy Bylsma's Claim Does Not Fall within the Limited Class of NIED Actions Recognized by Washington Law

¶23 The majority also analogizes to negligence cases. This is not only unnecessary, it is misguided. Product liability claims brought against a manufacturer are based on strict liability, not negligence. RCW 7.72.030(2). It would be imprudent to extend recovery for emotional distress damages—which are notoriously difficult to measure—to the realm of strict liability:

> "[T]he fault of a defendant is an indispensable element of duty of care in an action brought for the infliction of emotional distress . . . . [I]n the absence of fault or other culpable conduct a defendant may not be rendered liable for this particular harm. To put it another way, it means that in an action instituted for causing emotional trauma, the liability of a defendant is premised plainly and directly on the presence or absence of defendant's fault. Since the doctrine of strict liability is not founded upon fault or culpable conduct, a defendant manufacturer should not be held liable under the doctrine for the special harm of inflicting emotional distress upon a plaintiff."

*Pasquale v. Speed Prods. Eng'g*, 166 Ill. 2d 337, 350, 654 N.E.2d 1365, 211 Ill. Dec. 314 (1995) (quoting *Shepard v. Superior Court*, 76 Cal. App. 3d 16, 26, 142 Cal. Rptr. 612 (1977) (Kane, J., dissenting)). We must bear in mind that "strict liability is not absolute liability." *Baughn v. Honda Motor Co.*, 107 Wn.2d 139, 127, 727 P.2d 655 (1986). Unfortunately, it is the public that will bear the burden of the increased costs likely to emanate from this unprecedented expansion of products liability. The majority conveniently overlooks the statutory language and legislative history demonstrating that this was the very problem the legislature sought to remedy by enacting the WPLA.

¶24 Even assuming a claim for emotional distress under the WPLA may be analogized to an NIED claim, we have placed significant limitations on NIED claims that the majority also completely ignores. *See Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 49, 176 P.3d 497 (2008) ("The tort of [NIED] is a limited, judicially created cause of action . . . ."). Over time we have slowly narrowed what is deemed foreseeable in order not to place unreasonable burdens on human activity.

¶25 We first recognized NIED as an independent cause of action in *Hunsley v. Giard*, 87 Wn.2d 424, 553 P.2d 1096 (1976). There, the plaintiff was shocked when her neighbor drove a car through the plaintiff's wall and into her utility room. *Id.* at 425. She suffered physical heart damage as a result of the stress, in part caused by her concern "for her longtime neighbor, the defendant driver." *Id.* While we held recovery was possible, we emphasized that the case did not involve emotional distress alone; the plaintiff's mental suffering resulted in physical abnormalities. *Id.* at 436. We wanted to make sure that NIED claims were limited. To do so, we held that "the plaintiff's mental distress must be the reaction of a normally constituted person . . . ." *Id.* We charged future courts with administering "adequate limitations" upon NIED claims. *Id.* at 435.

¶26 Subsequent to *Hunsley*, we expressed uneasiness with its holding because we felt it did not sufficiently limit the scope of NIED claims. *See Gain v. Carroll Mill Co.*, 114 Wn.2d 254, 787 P.2d 553 (1990). In *Gain*, we narrowed *Hunsley* by holding that family members could recover for NIED only if they were present at the time of the accident or had arrived shortly thereafter. *Id.* at 260. We recognized that "unless a reasonable limit on the scope of defendants' liability is imposed, defendants would be subject to potentially unlimited liability . . . ." *Id.* Then, in *Hegel v. McMahon*, we narrowed NIED claims even further by holding that the family members must arrive at the scene before a substantial change in the relative's condition or location. 136 Wn.2d 122, 132, 960 P.2d 424 (1998).

¶27 We continued to carefully delineate the circumstances under which an NIED action can be sustained in *Colbert*, 163 Wn.2d 43. In *Colbert*, the plaintiff's daughter drowned after inhaling carbon monoxide fumes emitted from the back of a motorboat. *Id.* at 46. The plaintiff was not present at the scene of the accident and only observed rescue workers pull his daughter's body from the water hours later. *Id.* at 47. We held that the father could not recover for NIED, noting that "[t]here must be actual sensory experience of the pain and suffering of the victim— personal experience of the horror." *Id.* at 56. In other words, the plaintiff must be subject to "conditions analogous to seeing a 'crushed body' . . . or hearing 'cries of pain [or] dying words.' " *Id.* at 57 (emphasis omitted) (second alteration in original) (internal quotation marks omitted) (quoting *Hegel*, 136 Wn.2d at 130). The plaintiff's arrival at the scene hours past his daughter's death after he had been notified of the accident did not cross this threshold.

¶28 Clearly, we have attempted to limit NIED recovery to those individuals who are most likely to be severely impacted by " 'the shock caused by the perception of an especially horrendous event.' " *Id.* at 54 (emphasis omitted) (quoting *Gates v. Richardson*, 719 P.2d 193, 199 (Wyo. 1986)). In a "bystander" case, the plaintiff witnesses the injury or death of a close family member. The majority attempts to make much of the fact that Deputy Bylsma suffered his supposed injuries directly at the hands of the product (a hamburger). It is more accurate to say that Deputy Bylsma's alleged injury stemmed from the sight of something upsetting, like every other "bystander" claim. If we are going to analogize to negligence cases, we must take these "bystander" cases and their limitations into account.

¶29 The majority says the foreseeability line it draws is based on " 'mixed considerations of logic, common sense, justice, policy, and precedent.' " Majority at 561 (internal quotation marks omitted) (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)). There is simply no

logical reason, however, to limit recovery for emotional distress in NIED cases where a family member is traumatized by seeing or learning of the death of a loved one, but not in Deputy Bylsma's case, where he claims trauma from the sight of a contaminated burger he did not even eat.

¶30 Like in the NIED cases where we imposed limitations on recovery, Deputy Bylsma's claim raises significant concerns about "potentially unlimited liability to virtually anyone who suffers mental distress" caused by receiving a food product that does not meet specifications. *Gain*, 114 Wn.2d at 260. Should a restaurant be held liable for the emotional distress suffered by a strict vegetarian who is served a dish containing meat? *See Gupta v. Asha Enters., LLC*, 422 N.J. Super. 136, 27 A.3d 953 (2011) (answering no). Is a person who maintains a kosher diet emotionally distressed after possibly being served nonkosher food? *See Siegel v. Ridgewells, Inc.*, 511 F. Supp. 2d 188 (D.D.C. 2007) (answering no). What if a customer finds a strand of hair in his or her food? While certainly off-putting, these scenarios involve the type of mental distress that is simply a "fact of life." *Hunsley*, 87 Wn.2d at 435. Each falls short of " 'an especially horrendous event' involving conditions analogous to seeing a 'crushed body . . . or hearing 'cries of pain [or] dying words.' " *Colbert*, 163 Wn.2d at 57 (emphasis omitted) (second alteration in original) (internal quotation marks omitted) (quoting *Hegel*, 136 Wn.2d at 130)). Similarly, Deputy Bylsma "simply did not experience conditions that are comparable to actually witnessing a loved one's accidental death or serious injuries." *Id.*

¶31 Given our most recent NIED case law and its accompanying limitations, the majority's reliance on *Corrigal v. Ball & Dodd Funeral Home, Inc.* is misplaced. 89 Wn.2d 959, 962, 577 P.2d 580 (1978). *Corrigal* was decided soon after *Hunsley*, before we restricted the scope of NIED claims. In *Corrigal*, we specifically held that the plaintiff "stated a cause of action for negligent infliction of mental distress under *Hunsley*." *Id.* Moreover, like *Hunsley*, the

result in *Corrigal* was dictated by ordinary negligence principles, which we explicitly held in *Colbert* do not apply to NIED claims:

> *Corrigal* was decided shortly after *Hunsley* and before *Gain* and *Hegel*, at a time when this court tested a claim of [NIED] only against the general elements of a tort claim and no more. As explained, *Gain* and *Hegel* placed limits on liability for [NIED] that were not imposed in *Hunsley*, and these limits were not considered in *Corrigal*. *Hunsley* no longer controls with regards to requirements for a claim of [NIED].

*Colbert*, 163 Wn.2d at 59 n.3. The remaining cases the majority relies upon to show that we allow recovery in the absence of physical injury are also readily distinguishable.

¶32 We decided *Wright v. Beardsley* in 1907, long before we recognized the tort of NIED or its limitations. 46 Wash. 16, 19, 89 P. 172 (1907) (finding parents could recover for mental anguish resulting from the improper burial of their child). Moreover, that case involved a wrong more akin to the injury of a loved one than the contamination of a food product that the plaintiff did not consume. We discussed *Wright* in *Kneass v. Cremation Society of Washington*, stating that " '[t]he [defendants'] acts [in *Wright*] were regarded by the court as wilful . . . .' " 103 Wash. 521, 524, 175 P. 172 (1918) (finding parents of an infant child who had been cremated and whose ashes had been lost could not recover for mental suffering and anguish because there was no physical injury or pecuniary loss (quoting *Corcoran v. Postal Tel.-Cable Co.*, 80 Wash. 570, 584, 142 P. 29 (1914))). "[T]he rule in the *Wright* case was based on a wilful wrong[, not negligence,] and the physical invasion of the plaintiff's rights," not just emotional distress. *Id.* Consequently, *Wright* fails to offer any support to the majority's holding.

¶33 *Brillhardt v. Ben Tipp, Inc.* is similarly distinguishable because it was decided in 1956, before we recognized the tort of NIED or its limitations. 48 Wn.2d 722, 297 P.2d 232 (1956) (allowing a plaintiff to recover for annoyance and inconvenience when the defendant inadvertently

printed plaintiff's telephone number on its sale slips, causing plaintiff to be harassed by telephone calls). Furthermore, the *Brillhardt* court said that recovery was possible only because there was "an actual invasion of the respondent's right to enjoy her property without unreasonable interference." *Id.* at 727. *Brillhardt* did not allow recovery based solely on emotional distress.

CONCLUSION

¶34 The answer to the Ninth Circuit Court of Appeals' certified question should be no; the WPLA does not permit relief for emotional distress damages, in the absence of physical injury, caused to a purchaser who is served but does not consume a contaminated food product. Under *Hiltbruner*, emotional distress damages are available for a statutory cause of action only if the statute so provides or if the statute requires intentional conduct to impose liability. The WPLA's definition of "harm" references case law. The only case on point, *Fisons*, instructs emotional distress damages are not recoverable under the WPLA. But, even if the WPLA were silent, emotional distress damages are not available under *Hiltbruner* because the WPLA imposes liability without fault.

¶35 Furthermore, looking to NIED cases is inappropriate because a WPLA claim does not require proof of negligence. Yet, even if we were to do so, the analysis would not instruct that emotional damages are available here. NIED is a judicially created and carefully limited cause of action that allows recovery for a plaintiff who experiences conditions that are comparable to witnessing a loved one's accidental death or serious injury. The sight of a contaminated burger comes nowhere near this threshold. Emotional distress damages are not recognized by Washington law under these circumstances. I respectfully dissent.

MADSEN, C.J., and OWENS, J., concur with J.M. JOHNSON, J.

Reconsideration denied July 10, 2013.