**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| M.N. and G.T., individually and on behalf of all others similarly situated,<br><br>         Appellants,<br><br>A.B. and W.N., individually and on behalf of all others similarly situated,<br><br>         Plaintiffs Below,<br><br>   v.<br><br>MULTICARE HEALTH SYSTEM, INC., a Washington corporation,<br><br>         Respondent. | No. 55288-4-II<br><br><br><br><br><br><br><br>ORDER DENYING<br>MOTION TO FILE REPLY<br>AND ORDER GRANTING<br>MOTION TO PUBLISH |

Appellants, M.N. and G.T., filed a motion to publish this court's unpublished opinion filed on August 23, 2022. After Respondent filed a response to the motion called for by the court, Appellants filed a Motion for Leave to File Reply in Support of Motion to Publish. After consideration, it is hereby

**ORDERED** that Appellant's Motion for Leave to File Reply in Support of Motion to Publish is denied. It is further

No.  55288-4-II

**ORDERED** that the motion to publish is granted.  The final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted.

FOR THE COURT:  Jj. Worswick, Lee, Price

_____
LEE, JUDGE

Filed
Washington State
Court of Appeals
Division Two

August 23, 2022

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| M.N. and G.T., individually and on behalf of all others similarly situated,<br><br>               Appellants,<br><br>A.B. and W.N., individually and on behalf of all others similarly situated,<br><br>               Plaintiffs Below,<br><br>     v.<br><br>MULTICARE HEALTH SYSTEM, INC., a Washington corporation,<br><br>               Respondents. | No. 55288-4-II<br><br><br><br><br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — Class representatives M.N. and G.T.[1] appeal the superior court's order granting summary judgment for MultiCare Health System, Inc. and dismissing the General Treatment Class's negligence claims. M.N. and G.T. argue that the superior court erred in granting summary judgment because MultiCare owed the class a duty and there was a genuine issue of material fact as to proximate cause. We hold that summary judgment was proper because M.N. and G.T. cannot establish the legal causation prong of proximate cause. Accordingly, we affirm the superior court's order granting summary judgment.

---

[1] As explained below, M.N. and G.T. were appointed class representatives of the "General Treatment Class" by the superior court.

No. 55288-4-II

FACTS

In 2018, an investigation was conducted relating to two patients who were diagnosed with Hepatitis C infections despite having no risk factors for the infection. The investigation revealed that a nurse, Cora Weberg, was diverting drugs from the emergency department for her own use. Weberg's drug diversion caused the Hepatitis C infections.[2]

MultiCare identified a total of 2,985 patients who were treated with certain drugs in the emergency department while Weberg was working. Weberg treated 208 of the identified patients. The remaining 2,554 patients had no record of being treated by Weberg.

MultiCare notified 2,762 patients who were treated in the emergency department while Weberg was working that they may be at risk of infection and instructed the patients to get tested for Hepatitis B, Hepatitis C, and the Human Immuno-Deficiency Virus (HIV). The notification letter stated that an employee "may have exposed at least two patients to Hepatitis C." Clerk's Papers (CP) at 462. The letter offered free testing and any related follow-up for Hepatitis and HIV for all patients who were treated with injections in the emergency department while Weberg was working. The letter encouraged people to get tested, but noted that a positive test did not mean that exposure or infection necessarily occurred at MultiCare.[3] The letter also stated:

---

[2] The most common means of Hepatitis C transmission is among intravenous drug abusers by sharing needles.

[3] Of the 208 patients Weberg treated, 20 tested positive for either Hepatitis C antibody or the Hepatitis C virus. Of these 20, 13 had the strain of Hepatitis C that was the same as Weberg's strain, three had only the antibody to hepatitis C, and four had Hepatitis C virus in their blood but the level of the virus was so low that the strain could not be typed. CP at 598.

Of the persons who were not treated by Weberg, one person was positive for Hepatitis C virus, and 49 persons had Hepatitis C antibody in their blood but no Hepatitis C antigen was

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55288-4-II

> We sincerely apologize for the anxiety that this situation may cause you. This is something that should never happen in any health care facility and we are committed to providing you with support.
>
> . . . .
>
> We understand how concerning this information is for you and that you may have questions. We have established a resource line staffed with individuals who can provide assistance.
>
> . . . Our team is available Monday through Friday between 8am and 6pm. We want to make this process as easy as possible for you and to alleviate any unease. Your health is important to us.

CP at 462-63.

After receiving MultiCare's notification letter, patients "who were subject to both actual and potential Hepatitis C exposure" filed a class action lawsuit against MultiCare, alleging a violation of chapter 7.70 RCW and corporate negligence. CP at 27-28. The complaint alleged that MultiCare negligently hired, trained, and supervised Weberg; failed to investigate Weberg and the misuse of drugs; and failed to implement or follow policies and procedures regarding proper medication management. The complaint asserted that, as a result of MultiCare's negligence, the class members

> incurred the need for necessary medical care, treatment, and services received as of the filing of this action and with reasonable probability to be required in the future; have incurred inconvenience and loss of time associated with such medical care, treatment, and services; suffered serious emotional distress, including but not limited to living with the knowledge that they could have or potential[ly] will contract a bloodborne pathogen disease, such as Hepatitis C.

CP at 43.

---

detected, which indicates that these 49 were infected with Hepatitis C at some time in the past but had cleared their infection. None these people were linked to Weberg.

No. 55288-4-II

The superior court granted class certification and certified two classes. The "'Weberg Treatment Class'" included the patients who received treatment from Weberg. CP at 322. The "'General Treatment Class'" included the patients who were in the emergency department and received MultiCare's notification letter but did not receive any treatment from Weberg. CP at 322. M.N. and G.T. were appointed class representatives for the General Treatment Class. The court created two classes to eliminate "any concern that patients not directly treated by Nurse Weberg may not be entitled to relief under the same cause of action" as those patients directly treated by Weberg. CP at 321.

MultiCare moved for summary judgment for all claims asserted by the General Treatment Class. MultiCare argued that that the injuries alleged by the General Treatment Class were not proximately caused by the alleged negligent acts because the class members suffered no actual exposure.[4]

In opposing summary judgment, the General Treatment Class argued that it was owed a duty under chapter 7.70 RCW and corporate negligence. Further, the General Treatment Class argued that they were not required to show actual exposure to Hepatitis C in order to establish its claims.

The superior court granted MultiCare's motion for summary judgment and dismissed the claims alleged by the General Treatment Class against MultiCare. M.N. and G.T. moved for

---

[4] Multicare also argued that the General Treatment Class could not establish an emotional distress or a medical malpractice claim as a matter of law. However, the General Treatment class did not bring an emotional distress or medical malpractice claim and does not argue those claims on appeal. Rather, the General Treatment Class brought claims under chapter 7.70 RCW and corporate negligence.

4

No. 55288-4-II

reconsideration of the superior court's order granting summary judgment to MultiCare, which the superior court denied.

M.N. and G.T. appeal.[5]

## ANALYSIS

A. STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). We perform the same inquiry as the superior court in its review. *City of Seattle v. Long*, 198 Wn.2d 136, 145, 493 P.3d 94 (2021).

We consider the facts and reasonable inferences in the light most favorable to the nonmoving party. *Meyers*, 197 Wn.2d at 287. Summary judgment is appropriate if the pleadings, affidavits, and depositions show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018); CR 56(c).

B. PROXIMATE CAUSE—LEGAL CAUSATION[6]

M.N. and G.T. argue that MultiCare's negligence was the proximate cause of the General Treatment Class's injuries. MultiCare argues that the General Treatment Class has failed to establish legal causation and, therefore, failed to establish proximate cause.

---

[5] M.N. and G.T. originally filed a motion for discretionary review. A commissioner of this court converted the motion for discretionary review to a notice of appeal.

[6] By addressing the legal causation prong of proximate cause, we do not imply that the General Treatment Class has established a duty owed, a breach of that duty, and cause in fact. Rather, we address the dispositive issue of legal causation as a matter of law without deciding the issues of duty, breach, and cause in fact.

No. 55288-4-II

          1.        Legal Principles

To establish a claim, M.N. and G.T. must show that Multicare's negligence was the proximate cause of the alleged injuries. RCW 7.70.040(1)(b); *Douglas v. Freeman*, 117 Wn.2d 242, 248, 814 P.2d 1160 (1991). "Proximate cause is defined as a cause 'that in natural and continuous sequence, unbroken by an independent cause, produces the injury complained of and without which the ultimate injury would not have occurred.'" *Collins v. Juergens Chiropractic, PLLC*, 13 Wn. App. 2d 782, 793-94, 467 P.3d 126, (internal quotation marks omitted) (quoting *Mehlert v. Baseball of Seattle, Inc.*, 1 Wn. App. 2d 115, 118, 404 P.3d 97 (2017)), *review denied*, 196 Wn.2d 1027 (2020). Proximate cause requires a showing of two elements: cause in fact and legal causation. *Id*. at 794.

"Legal causation is a question for the court to decide as a matter of law if the facts are undisputed." *Id*. Legal causation "refers to a 'policy determination[] as to how far the consequences of a defendant's acts should extend.'" *Id*. at 794 (internal quotation marks omitted) (quoting *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 437, 378 P.3d 162 (2016)). The question is "whether those acts are 'too remote or insubstantial to trigger liability.'" *Id.* (internal quotation marks omitted) (quoting *N.L.*, 186 Wn.2d at 437). Legal causation "is determined by utilizing 'mixed considerations of logic, common sense, justice, policy, and precedent.'" *Meyers*, 197 Wn.2d at 293 (internal quotation marks omitted) (quoting *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 479, 951 P.2d 749 (1998)).

The parties do not dispute that the General Treatment Class did not have any actual exposure. However, the parties disagree on whether actual exposure is required, or should even be considered, to establish legal causation. No Washington case has established the legal

No. 55288-4-II

requirements to prove negligence based on the risk of exposure to infectious diseases. Courts in other states have addressed how to determine proximate cause in cases in which the plaintiff claims that negligence has resulted in damages resulting from a risk of contracting an infectious disease.[7] *See Williamson v. Waldman*, 150 N.J. 232, 240-41, 696 A.2d 14 (1997). But, as discussed below, there is neither a universal standard nor a consensus on requiring actual exposure. Rather, there appears to be two categories of approaches: an objective standard requiring the plaintiff to provide some additional evidence proving the risk of exposure and a reasonableness approach focusing on the reasonableness of the plaintiff's fear they were at risk of contracting a communicable disease. *Id*. at 241-42.

Some courts imposing an objective standard require a plaintiff to show actual exposure to a virus. *Id*. at 241 (citing *Burk v. Sage Prods., Inc.*, 747 F. Supp. 285, 286 (E.D. Pa. 1990); *K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995); *Brown v. N.Y.C. Health & Hosps.*, 225 A.D.2d 36, 648 N.Y.S.2d 880, 886 (1996); *Carroll v. Sisters of Saint Francis Health Servs.*, 868 S.W.2d 585, 594 (Tenn.1993)). Other courts imposing an objective standard "have added the further requirement that a plaintiff prove a medically sound channel of transmission" of the virus. *Id*. at 242.

---

[7] M.N. and G.T. argue that out-of-state case law has no relevance to their claim because the out-of-state case law addresses claims for negligent infliction of emotional distress while their claim is based on chapter 7.70 RCW and corporate negligence. However, both chapter 7.70 RCW and corporate negligence require showing the breach of duty was the proximate cause of the injury. RCW 7.70.040(1)(b); *Douglas*, 117 Wn.2d at 248. And the majority of injuries complained of—anxiety, fear, humiliation, and inconvenience—are quintessentially emotional distress damages. Therefore, the principles and reasoning establishing proximate cause for negligent infliction of emotional distress are applicable.

No. 55288-4-II

Policy considerations supporting the imposition of an objective standard include preventing "speculative, unreliable and fraudulent claims" and preventing general ignorance, hysteria, and irrational fear. *Id*. at 243. However, some courts have recognized that imposing an objective standard can have harsh and unfair results while also not necessarily counteracting the ignorance or fear. *Id*. at 244-45. These courts have adopted a reasonableness standard. *Id*. The policy considerations supporting a reasonableness approach include fairness and the general tort principles of redressing harms. *Id*. at 245-46. Further, by incorporating a requirement that reasonableness of fear be based on current and accurate medical knowledge, this standard can effectively combat concerns regarding ignorance or misinformation. *Id*. at 246-47.

Ultimately, there appears to be no bright-line rule regarding the requirement of actual exposure to establish proximate cause. Rather, proximate cause for claims based on damages resulting from the risk of contracting an infectious disease, which is the basis of the General Treatment Class's claims, appears to be resolved based on a determination of legal causation—where to draw a line regarding liability based on policy considerations. *See id*. at 245-46.

2.    No Legal Causation

M.N. and G.T. argue that the General Treatment Class has established legal causation because, as a matter of policy, MultiCare should be held accountable for its actions. Specifically, M.N. and G.T. assert that "[f]orcing the innocent members of the General Treatment Class in this case to bear the burden for the emotional distress, inconvenience, and physical harm from invasive testing caused by MultiCare's negligence would run afoul of the basic and guiding principle of the law of torts: to afford compensation for injuries sustained by one person as a result of the tortious

8

No. 55288-4-II

conduct of another." Br. of Appellant at 42 (footnote omitted). MultiCare asserts that M.N. and G.T. have failed to establish legal causation because any damages from Weberg's conduct are too attenuated and policy considerations do not support extending liability for the direct consequences of the notification letter to the General Treatment Class.

The General Treatment Class's claims arise from the fear of contracting a communicable disease after having received MultiCare's notification letter.[8] MN and GT contend that they have a "reasonable, specific, and fact-based fear of having contracted Hepatitis C" because Hepatitis was present in the emergency department when Weberg was working and Hepatitis C is actually transmitted through injections. Br. of Appellant at 39. But the General Treatment Class did not receive injections from Weberg, and the only reason the General Treatment Class believed they were at risk of contracting Hepatitis is because MultiCare sent them a notification letter.

Because the General Treatment Class's fear primarily arises from their receipt of the notification letter, not being treated by Weberg, this case requires us to weigh the distress caused by MultiCare's notification letter against a policy of encouraging medical institutions to be open, transparent, and overinclusive in its notifications. Imposing liability would discourage medical institutions from making the type of disclosures that MultiCare did through its notification letter. We recognize that some members of the General Treatment Class got tested for Hepatitis and

---

[8] We recognize that, as the dissent notes, the General Treatment Class's fear of contracting Hepatitis C resulted in both physical damages related to testing (for those who chose to get tested) and emotional damages. Dissent at 1. However, legal causation focuses on whether any *liability* should, as a policy matter, attach to a defendant's actions. *See Collins*, 13 Wn. App. 2d at 794. Therefore, our determination that the General Treatment Class has failed to establish legal causation is based on the policy considerations regarding MultiCare's liability, not the type of damages being claimed.

9

No. 55288-4-II

suffered distress and inconvenience from doing so. But that must be weighed against a policy that encourages full transparent disclosure and notification.

As a policy matter, we decline to extend MultiCare's liability to damages which are caused primarily by MultiCare's decision to broadly issue the notification letter. Generally, Washington law disfavors damages exclusively on emotional distress without a corresponding physical harm or objective manifestation. *See Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560-62, 293 P.3d 1168 (2013) (requiring objective symptomology to establish emotional distress damages). Moreover, Washington law evidences a policy that encourages defendants to provide notification and an apology without fear of incurring liability. *See* RCW 5.64.010 (providing that statements, affirmations, gestures or conduct expressing apology, fault, sympathy, commiseration, condolence, compassion, benevolence, or regarding remedial actions are not admissible in civil actions); ER 407 (evidence of subsequent remedial measures is inadmissible). Although Washington does have a general policy favoring holding tortfeasors liable for their negligent acts as M.N. and G.T. assert, the General Treatment Class is attempting to hold MultiCare responsible not for its negligence but rather for its attempt to provide notice and an apology. Therefore, imposing liability against MultiCare in this case would be contrary to Washington policy.

In weighing the policy considerations, we are persuaded that the policy of encouraging medical institutions to be open, transparent, and overinclusive outweighs the General Treatment Class's fear of contracting a communicable disease caused by MultiCare's notification letter. Accordingly, we hold that the General Treatment Class has failed to establish legal causation.

No. 55288-4-II

Because the General Treatment Class has failed to establish proximate cause as a matter of law, the superior court properly granted summary judgment and dismissed their claims. We affirm the superior court's order granting summary judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

I concur:

Price, J.

No. 55288-4-II

WORSWICK, J. — (Dissenting) Although I agree with the majority's conclusion that the General Treatment Class cannot recover for *emotional injury* based on fear of contracting hepatitis, the majority has failed to address the class's claim for physical injuries. Therefore, I respectfully disagree with the majority's decision to affirm the order granting summary judgment.

As the majority described, MultiCare Health System, Inc. notified 2,762 prior patients that a MultiCare employee may have exposed them to the Hepatitis C virus. Majority at 2. The letter advised that "[t]he only way to be certain you were not infected is to have your blood tested," and also advised that "[i]t is possible you may need to be re-tested again in six months." CP at 462. Patients were urged to get tested in order to make sure they were not infected. CP at 463.

The General Treatment Class sued for damages to include, "the physical invasion and pain of the blood draws for testing, other effects and risks of the testing process, and the months of anxiety and fear suffered by every class member." CP at 30, 32. Although the majority appropriately determines there is no proximate cause for the General Treatment Class's claim for any emotional damages, the majority does not address whether the class should be compensated for damages associated with medical monitoring. I think it should.

The 2,762 patients were advised to get invasive blood testing and to repeat the test in six months. CP at 462. The class describes this as physical harm. Our Supreme Court has called blood draws "highly invasive." *State v. Baird*, 187 Wn.2d 210, 220, 386 P.3d 239 (2016). The procedure involves some degree of pain, and in some individuals, a significant amount of anxiety. Jennifer McLenon & Mary A. M. Rogers, *The Fear of Needles: A Systematic Review*

12

No. 55288-4-II

*and Meta-Analysis*, 75 J. ADVANCED NURSING 30, 30 (2019). Plaintiffs who substantiate their pain and suffering with evidence are entitled to general damages. *Palmer v. Jensen*, 132 Wn.2d 193, 201, 937 P.2d 597 (1997).

The majority states in note 7 that the General Treatment Class has failed to establish proximate cause for any physical damages members may have incurred because they were not actually exposed to hepatitis. Majority at 7. But this conclusion is not based on any of the cases it cites to support its conclusion that no proximate cause exists if there has not been actual exposure to the virus. *Williamson v. Waldman*, 150 N.J. 232, 249, 696 A.2d 14 (1997) (holding no cause of action for emotional distress based on fear of contracting HIV without proof of actual exposure); *Burk v. Sage Prods., Inc.*, 747 F. Supp. 285, 286 (E.D. Pa. 1990) (holding no cause of action for emotional distress based on fear of contracting HIV without proof of actual exposure); *K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995) (holding no cause of action for negligent infliction of emotional distress for fear of contracting HIV where no physical injury occurred); *Brown v. New York City Health & Hosps. Corp.*, 225 A.D.2d 36, 648 N.Y.S.2d 880, 886-87 (1996) (limiting plaintiff's cause of action for emotional damages to six-month period where plaintiff refused to submit to HIV test); *Carroll v. Sisters of Saint Francis Health Servs., Inc.*, 868 S.W.2d 585, 594 (Tenn. 1993) (holding no cause of action for emotional damages for fear of contracting HIV without proof of actual exposure).

Moreover, the policy consideration relied on by the majority is to prevent "'speculative, unreliable and fraudulent claims' and preventing general ignorance, hysteria, and irrational fear," none of which are present when plaintiffs are subjected to invasive testing at the behest of the defendant. Majority at 8 (quoting *Williamson*, 150 N.J. at 244). The majority's decision

No. 55288-4-II

incorporates a requirement of a "reasonableness of fear." Majority at 8. Although I agree with this requirement as it relates to a cause of action for negligent infliction of emotional distress for fear of contracting hepatitis, the requirement simply does not apply where actual physical injury is incurred.

Because the majority does not take into account the class's physical injuries, I dissent in part.

_____
Worswick, P.J.